# EXHIBIT A



IN THE SUPERIOR COURT
OF THE VIRGIN ISLANDS

**FILED**

May 20, 2021

SX-2021-CV-00414

**TAMARA CHARLES
CLERK OF THE COURT**

**IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX**

|  |  |
|---|---|
| BEECHER COTTON, PAMELA COLON, SIRDINA ISAAC-JOSEPH, ESTHER CLIFFORD, SYLVIA BROWNE, ALVINA JEAN-MARIE ILARRAZA, individually and on behalf of all others similarly situated,<br><br>          Plaintiffs,<br><br>v.<br><br>LIMETREE BAY VENTURES, LLC, LIMETREE BAY REFINING, LLC, LIMETREE BAY TERMINALS, LLC, ARCLIGHT CAPITAL PARTNERS, LLC, FREEPOINT COMMODITIES, LLC, EIG GLOBAL ENERGY PARTNERS, LLC, BP PRODUCTS NORTH AMERICA, INC. and JOHN DOES 1-10.,<br><br>          Defendants. | CIVIL NO. _____<br><br>**CLASS ACTION COMPLAINT**<br><br>**ACTION FOR DAMAGES**<br><br><u>JURY TRIAL DEMANDED</u> |

## **CLASS ACTION COMPLAINT**

Plaintiffs Beecher Cotton, Pamela Colon, Sirdina Isaac-Joseph, Esther Clifford, Sylvia Browne, and Alvina Jean-Marie Ilarraza ("Plaintiffs"), individually and on behalf of all others similarly situated, through their undersigned counsel, file this Class Action Complaint asserting claims against Defendants Limetree Bay Ventures, LLC, Limetree Bay Refining, LLC, Limetree Bay Terminals, LLC, Arclight Capital Partners, LLC, Freepoint Commodities, LLC, EIG Global Energy Partners, LLC, BP Products North America, Inc., and John Does 1-10 (collectively, "Defendants"). Plaintiffs respectfully represent to the Court as follows:

1.     This Court has jurisdiction pursuant to 4 V.I.C § 76, *et seq*.

**LEE J. ROHN AND ASSOCIATES, LLC**
1108 King St, Ste 3
Christiansted, VI 00820
Tel: 340.778.8855
Fax: 340.773.2954
lee@rohnlaw.com

*COTTON, BEECHER, ET. AL. V. LIMETREE BAY VENTURES, LLC, ET. AL. (CLASS ACTION),* CIVIL NO.
**CLASS ACTION COMPLAINT**
Page 2

2.      This is a civil action to secure redress from Defendants for damages suffered by Plaintiffs and other members of the Class defined below (the "Class Members") as a result of Defendants' wrongful emission, release, and discharge of hazardous substances, gases, and odors, including but not limited to oil, hydrogen sulfide, sulfur dioxide, petroleum hydrocarbons, and other chemicals, toxins, and particulates (collectively, "Refinery Contaminants") from the Limetree Bay Refinery located on St. Croix, U.S. Virgin Islands ("Limetree Bay Refinery").

3.      Plaintiffs and Class Members have suffered personal injuries and property damage due to numerous contamination incidents at the Limetree Bay Refinery since it reopened in February 2021. Specifically, Plaintiffs and Class Members, and their property, have been unnecessarily exposed to Refinery Contaminants because of Defendants' failure to operate the Limetree Bay Refinery responsibly and lawfully. In addition, Plaintiffs and Class Members have also been subjected to unreasonable odors, gases, vapors, and fumes because of Defendants' conduct in operating the Limetree Bay Refinery.

4.      Defendants' operations at the Limetree Bay Refinery have resulted in the release of airborne matter that scatters so that persons and properties in the nearby geographic areas have been exposed to toxic and hazardous materials, including, without limitation, Refinery Contaminants, odors, gases, vapors, and fumes.

5.      The Refinery Contaminants, odors, gases, vapors, and fumes have been and continue to be sources of hazardous substance emissions into, onto, within, and surrounding properties and persons in the communities near and around the Limetree Bay Refinery.

*COTTON, BEECHER, ET. AL. V. LIMETREE BAY VENTURES, LLC, ET. AL. (CLASS ACTION),* CIVIL NO.
**CLASS ACTION COMPLAINT**
Page 3

6.      The ongoing release of Refinery Contaminants resulting from Defendants' operations at the Limetree Bay Refinery, as well as the odors, gases, vapors, and fumes, has impacted Plaintiffs' and Class Members' properties and property values, is a blight and nuisance on Plaintiffs' and the Class Members' communities, and deprive Plaintiffs and Class Members of their free use and enjoyment of their property.

7.      Plaintiffs seek relief to remedy the harms from Defendants' negligent, reckless, and careless ownership and operation of the Limetree Bay Refinery. Plaintiffs bring this action individually and on behalf of other individuals and entities who have suffered personal injuries and/or property damage as a result of recent contamination incidents at the Limetree Bay Refinery, including but not limited to incidents that occurred on February 4, 2021, April 23, 2021, May 5, 2021, and/or May 12, 2021 (further individually defined and described below and collectively referred to herein, along with any other contamination incidents that have occurred since the Limetree Bay Refinery reopened, as "the Contamination Incidents"), including but not limited to all damages to personal property and real property resulting from the Contamination Incidents.

8.      These damages further include, without limitation, the cost of a medical monitoring program to be established for the continual screening and detection of illnesses, diseases, or disease processes necessitated by the exposure to toxic wastes released by Defendants, and a diminution in the value of their homes and other real properties.

## **PARTIES**

9.      Plaintiff, Beecher Cotton, is a citizen and resident of St. Croix, U.S. Virgin Islands.

*COTTON, BEECHER, ET. AL. V. LIMETREE BAY VENTURES, LLC, ET. AL. (CLASS ACTION),* CIVIL NO.
**CLASS ACTION COMPLAINT**
Page 4

10.     Plaintiff, Pamela Colon, is a citizen and resident of St. Croix, U.S. Virgin Islands.

11.      Plaintiff, Sirdina Isaac-Joseph is a citizen and resident of St. Croix, U.S. Virgin Islands.

12.     Plaintiff, Esther Clifford is a citizen and resident of St. Croix, U.S. Virgin Islands.

13.     Plaintiff, Sylvia Browne is a citizen and resident of St. Croix, U.S. Virgin Islands.

14.     Plaintiff, Alvina Jean-Marie Ilarraza is a citizen and resident of St. Croix, U.S. Virgin Islands.

15.     Defendant Limetree Bay Ventures LLC ("Ventures LLC") is an energy complex located in St. Croix, U.S. Virgin Islands consisting of Limetree Bay Refinery and Limetree Bay Terminal, a 34-million-barrel crude and petroleum products storage and marine terminal facility. Ventures LLC is a Virgin Islands corporation with its principal place of business in the U.S. Virgin Islands.

16.     Defendant Limetree Bay Refining LLC ("Refining LLC") operates the Limetree Bay Refinery. Refining LLC is a Virgin Islands corporation with its principal place of business in the U.S. Virgin Islands.

17.     Defendant Limetree Bay Terminals, LLC ("Terminal LLC") is a joint venture of Defendant Arclight Capital Partners, LLC and Defendant Freepoint Commodities LLC. Terminal LLC is a Virgin Islands corporation with its principal place of business in the U.S. Virgin Islands.

*COTTON, BEECHER, ET. AL. V. LIMETREE BAY VENTURES, LLC, ET. AL. (CLASS ACTION),* CIVIL NO.
**CLASS ACTION COMPLAINT**
Page 5

18.     Defendant Arclight Capital Partners, LLC ("Arclight") is a private equity company that specializes in energy infrastructure investments. Arclight partnered with Defendant Freepoint Commodities, LLC in a joint venture with Defendant Terminal LLC, which purchased the Limetree energy complex in early 2016. Arclight is incorporated in the State of Delaware with its principal place of business located in Boston, Massachusetts. Arclight does business in the U.S. Virgin Islands and is noted to manage and own an 80% interest in Defendant Terminal LLC.

19.     Defendant Freepoint Commodities LLC ("Freepoint") is a company that offers physical commodity trading and finance services, trading in commodities including gas and oil, coal, emissions, metals, concentrates, and agricultural products. Freepoint partnered with Defendant Arclight in a joint venture with Defendant Terminal LLC, which purchased the Limetree energy complex in early 2016. Freepoint is incorporated in the State of Delaware with its principal place of business located in Stamford, Connecticut. Freepoint does business in the U.S. Virgin Islands and is noted to own a 20% interest in Defendant Terminal LLC.

20.     Defendant EIG Global Energy Partners, LLC ("EIG") is a private equity company that purports to specialize in private investments in energy and energy-related infrastructure. Funds and accounts managed by EIG led the preferred equity portion ($550 million) of a $1.25 billion financing package that Defendant Ventures LLC secured in November 2018 to fund the restarting of the Limetree Bay Refinery. EIG is incorporated in the State of Delaware with its principal place of business located in Washington, D.C. EIG does business in the U.S. Virgin Islands.

*COTTON, BEECHER, ET. AL. V. LIMETREE BAY VENTURES, LLC, ET. AL. (CLASS ACTION),* CIVIL NO.
**CLASS ACTION COMPLAINT**
Page 6

21.     Defendant BP Products North America, Inc. ("BP") is incorporated in the State of Delaware with its principal place of business located in Chicago, Illinois. As further alleged herein, BP has significant involvement with the operation of the Limetree Bay Refinery through its long-term tolling, supply, and offtake agreements with Defendant Refining LLC.

22.     Defendant Does 1 through 10, inclusive, are individuals and/or business and/or corporate entities incorporated in and/or doing business in St. Croix, U.S. Virgin Islands, whose true names and capacities are unknown to Plaintiffs, who therefore sue such defendants by such fictitious names, and who will amend the Complaint to show the true names and capacities of each such Doe defendant when ascertained. Each such Defendant Doe is legally responsible in some manner for the events, happenings, and/or tortious and unlawful conduct that caused the injuries and damages alleged in this Complaint.

23.     At all relevant times, each Defendant acted in all aspects as the agent and alter ego of each other, and reference to "Defendant" or "Defendants" herein refers to each and every Defendant individually and collectively. Defendants own and operate the Limetree Bay Refinery and/or have a significant interest in the Limetree Bay Refinery and other property directly implicated in the Contamination Incidents (further described below) and are responsible for the damages and injuries caused to Plaintiffs and Class Members as described in detail herein.

*COTTON, BEECHER, ET. AL. V. LIMETREE BAY VENTURES, LLC, ET. AL. (CLASS ACTION),* CIVIL NO.
**CLASS ACTION COMPLAINT**
Page 7

## FACTUAL ALLEGATIONS

**Background**

24.     The refinery, now known as Limetree Bay Refinery, has a long history of significant environmental and pollution problems that have negatively impacted the residents and citizens of St. Croix and the local environment for decades.

25.     The refinery facility was built by the Hess Oil Virgin Islands Corp in 1966, and by the following decade it had grown to become the largest refinery in the world, able to produce up to 650,000 barrels of oil a day.

26.     Before Defendants' ownership, control, and operation of the Limetree Bay Refinery, the property was owned and operated by Hovensa, LLC, a joint venture between Hess Corporation and Petroleos de Venezuela, the national oil company of Venezuela, and before that by HOVIC, a wholly-owned subsidiary of the Hess Corporation formerly known as Amerada Hess.

27.     Under HOVIC and  Hovensa, the refinery exceeded allowable emissions of known harmful substances, including nitrogen oxide, sulfur dioxide, volatile organic compounds (or VOCs), and benzene.

28.     In 2011, investigators discovered that the pipes carrying the refinery's waste product had been corroding, slowly leaking *more than 43 million gallons of oil into the island's only aquifer*.

29.     As a result of the massive leak, EPA ordered Hovensa to pay civil penalties of more than $5 million and spend more than $700 million in new pollution controls to protect the public health and resolve Clean Air Act violations in St. Croix. The EPA required

*COTTON, BEECHER, ET. AL. V. LIMETREE BAY VENTURES, LLC, ET. AL. (CLASS ACTION),* CIVIL
NO.
**CLASS ACTION COMPLAINT**
Page 8

Hovensa to implement new and upgraded pollution controls, more stringent emission limits
and aggressive monitoring, and leak detection and repair practices to reduce emissions
from refinery equipment and process units.

30.     Instead of paying its fines and undertaking the required improvement projects,
the Hess Corporation shut down the Hovensa facility in 2012.

31.     In September 2015, the U.S. Virgin Islands sued Hess Corporation for more
than $1 billion, alleging fraud and violation of its contractual obligations over the refinery's
closing.

32.     Instead of accepting responsibility for the harms that it caused, Hovensa filed
for Chapter 11 bankruptcy, allowing it to sell the refinery as an oil storage facility and
possible refinery to Defendant Limetree Terminals LLC, a joint venture of Defendants
Arclight and Freepoint, in early 2016. However, before closing on the purchase, Defendant
Terminal LLC negotiated a new operating agreement with a group representing the
Honorable Kenneth E. Mapp, Governor of the Virgin Islands, which authorized Defendant
Terminal LLC to own, restart, and operate the St. Croix Facility. In  December 2015,
the Legislature of the Virgin Islands voted to ratify the operating agreement, and the
Governor then signed the agreement into law.

33.     At the time of the purchase, the refinery complex was described as consisting
of "approximately 32 million barrels of crude oil and petroleum product storage, idled
refinery units with total peak processing capacity of 650 thousand barrels per day, a
deepwater port with nine ship docks, six tug boats, and various associated equipment and
inventory."

*COTTON, BEECHER, ET. AL. V. LIMETREE BAY VENTURES, LLC, ET. AL. (CLASS ACTION),* CIVIL
NO.
**CLASS ACTION COMPLAINT**
Page 9

34.     Further, it was reported that Defendant Terminal LLC intended to "make significant investments to revitalize the St. Croix Facility as an environmentally-compliant, multi-purpose energy center, with an initial focus on crude oil and refined petroleum product storage operations." To that end, the company executed a 10-year lease agreement for 10 million barrels of storage capacity with China Petroleum & Chemical Corporation ("Sinopec"). It also entered into lease agreements with Defendant Freepoint for an additional 3 million barrels of capacity. It was also reported that in addition to bringing into service most of the facility's existing storage capacity, Defendant Terminal LLC  was "actively pursuing the restart of certain of the idled refinery process units at the St. Croix Facility."

**<u>Limetree Bay Refinery Restart</u>**

35.     Shortly after purchasing the Limetree Bay Refinery complex in 2016, Defendants began to lay the groundwork to restart the refinery. This included collaborating with Defendant BP  to supply feedstocks to the refinery and manage product offtakes to enable Defendants to restart and operate the refinery.

36.     BP entered into long-term tolling, supply, and offtake agreements for a portion of the refinery manufacturing capacity. A tolling agreement is an agreement between a refinery and an oil supplier, such as BP, to process crude oil for a set fee, or toll. An offtake agreement is an agreement for a company to purchase a set amount of the refinery's future production. As part of these agreements, BP was to serve as the refinery's "supply and offtake counterparty." A "supply counterparty" is an entity that agrees to supply a product under contractual terms, while an "offtake counterparty" agrees to buy a product. In

*COTTON, BEECHER, ET. AL. V. LIMETREE BAY VENTURES, LLC, ET. AL. (CLASS ACTION),* CIVIL NO.
**CLASS ACTION COMPLAINT**
Page 10

essence, this meant that BP was contractually obligated to sell crude oil to the refinery and also buy refined products from it later. At the time the agreements with BP were announced, Government House issued a statement indicating: "Limetree Bay Refining announced Friday that it has reached a 'definitive agreement' with British Petroleum to ***operate*** the refinery on St. Croix's south shore." (emphasis added).

37.     Defendants' ability to restart the Limetree Bay Refinery was further advanced when they secured financing, in part from Defendant EIG, in 2018. Specifically, on November 30, 2018, Defendant Ventures announced that it had closed on a $1.25 billion financing package, comprised of $550 million of preferred equity and a $700 million term loan. The preferred equity was led by funds and accounts managed by Defendant EIG. In addition, Defendant Arclight also made a significant additional common equity commitment to Limetree Bay in conjunction with the financing.

38.     In connection with the tolling, supply, and offtake agreements entered into with Defendant BP, the $1.25 billion financing package provided the financial resources to complete the refinery restart.

39.     Defendants had aimed to resume refining oil at the Limetree Bay Refinery by the end of 2019; a target date timed to take advantage of expected changes in area fuel sulfur regulations scheduled to take effect January 1, 2020. The restart was delayed to early 2020 due to corrosion issues and then further delayed to July 2020 due to the Covid-19 pandemic. The restart was again pushed back into August and September 2020.

40.     Finally, after receiving a fast-tracked approval from the Trump administration in December 2020, the Limetree Bay Refinery represented that it was ready to reopen.

*COTTON, BEECHER, ET. AL. V. LIMETREE BAY VENTURES, LLC, ET. AL. (CLASS ACTION),* CIVIL NO.
**CLASS ACTION COMPLAINT**
Page 11

41.     Upon information, that unrealistic restart date resulted from pressure placed on the Defendants by BP to begin refining, or the contract with BP would be canceled.

42.     Defendants knew or should have known that the refinery was not in a proper condition to reopen and that the premature start-up would result in discharges and dangers to the community. Indeed, though Defendants had invested significant money into reopening the refinery, they had not made the necessary physical updates to the facility, leaving them with a 55-year old refinery ripe for serious operational problems.

43.     On February 1, 2021, Defendants initiated their long-planned restart of the Limetree Bay Refinery. In a press release issued at the time, Ventures LLC and EIG indicated that the Limetree Bay Refinery, which was to be operated by Limetree Refining LLC, can process over 200,000 barrels of crude oil and other feedstocks per day.

**February 4 Incident**

44.     Almost immediately after its restart, there were severe problems at the refinery caused by Defendants' negligence and recklessness. On February 4, 2021, only days after the reopening, a flare at the Limetree Bay Refinery caused the release of oil to rain down on over a hundred homes, vegetation, and cars in the adjacent neighborhood of Clifton Hill and beyond ("February 4 Incident").

45.     Local residents noted a "mist of oil" emitting from the Limetree Bay Refinery that coated their homes. One media account described the flaring incident as having "spewed a plume of steam and fuel residue into the air, covering more than 130 homes with specks of oil and contaminating the drinking water of more than 60 residents." EPA referred

*COTTON, BEECHER, ET. AL. V. LIMETREE BAY VENTURES, LLC, ET. AL. (CLASS ACTION),* CIVIL NO.
**CLASS ACTION COMPLAINT**
Page 12

to the emission as a mixture of oil and water in the form of an oily mist that included liquid droplets of oil.

46.     An EPA analysis revealed that the February 4 Incident was the result of a "'knockout drum' that would have normally tamped down fiery oil droplets probably … [not being] designed with sufficient capacity."

47.     The February 4 Incident resulted in the likely contamination of at least 193 residences, 148 roofs, 245 cars and at least 70 cisterns, the devices that St. Croix residents rely on to catch and store rainwater for their water needs, including drinking water (including both human consumption as well as for pets and livestock), washing, and watering vegetable gardens and vegetation. Cisterns are particularly necessary given the dire impact of the Limetree Bay Refinery's prior contamination of St. Croix's groundwater resulting from the leakage of over 43 million gallons of oil into the island's only aquifer over approximately 30 years.

48.     Despite the extensive and severe contamination that resulted from the February 4 Incident, residents whose cisterns were impacted were not told of the contamination by Defendants for several weeks, and information concerning the extent of the contamination was concealed from residents and the public.

49.     For instance, it took Defendants two weeks to inform Plaintiff Cotton, who lives just north of the Limetree Bay Refinery, that his cistern water had been contaminated by the February 4 Incident. After finally providing Plaintiff Cotton with notice of the contamination, Defendants then attempted to wrongfully induce Plaintiff Cotton to sign a release of claims that would pay him only $2,000 in exchange for waiving all of his legal

*COTTON, BEECHER, ET. AL. V. LIMETREE BAY VENTURES, LLC, ET. AL. (CLASS ACTION),* CIVIL
NO.
**CLASS ACTION COMPLAINT**
Page 13

rights to hold Defendants liable for any bodily harm or property damage relating to the
February 4 Incident. Plaintiff Cotton refused to sign the release form offered to him by
Defendants.

50.     Any similar release forms obtained by Defendants are unenforceable for
numerous reasons, including fraud in the inducement and misrepresentation by omission,
among other legal reasons.

**EPA Response and Additional Incidents on April 23, May 5, and May 12**

51.     In March 2021, in the wake of the February 4 Incident, the EPA revoked the
permit that enabled the Limetree Bay Refinery to reopen and announced that it was
investigating the February 4 Incident. The EPA's actions came in response to pressure
from environmental and community groups and a recent Executive Order instructing federal
agencies to review environmental measures taken by the previous administration.

52.     An EPA representative stated that "withdrawing this permit will allow EPA to
reassess what measures are required at the Limetree facility to safeguard the health of
local communities in the Virgin Islands, while providing regulatory certainty to the
company."

53.     In addition to the March 2021 permit revocation, the EPA took several
subsequent actions concerning Limetree's operation of the refinery and began to
investigate the flares that occurred, including with respect to the February 4 Incident, that
have released large amounts of sulfuric gases into the air and contaminated residents'
properties, air, and drinking water.

*COTTON, BEECHER, ET. AL. V. LIMETREE BAY VENTURES, LLC, ET. AL. (CLASS ACTION),* CIVIL
NO.
**CLASS ACTION COMPLAINT**
Page 14

54.     For instance, on April 8, 2021, the U.S. Department of Justice, on behalf of
the EPA, filed a Motion to Enter the First and Second Modifications to a 2011 Consent
Decree which resolved Clean Air Act violations of the refinery's prior owner, Hovensa,
which, among other things, substituted the facility's new owners, Limetree Terminal LLC
and Limetree Refining LLC, for Hovensa, and added an environmental response trust.

55.     In addition, on April 1 and April 30, 2021, the EPA issued letters requesting
information regarding the startup of certain process units, the February 4 Incident, Title V
reporting, other air releases, ambient sulfur dioxide monitoring, and maintenance of certain
boilers and process heaters.

56.     Despite the withdrawal of the permit, Defendants chose to continue their oil
refining operations, and predictably and foreseeably, given the fact that it was known to
Defendants that the Limetree Bay Refinery had been idled for years and was in poor
condition and not capable of operating correctly, contamination incidents continued to
occur.

57.     On April 23, 2021, another flaring incident released large amounts of sulfuric
gases into the air, exposing thousands of St. Croix residents to the released chemicals
("April 23 Incident"). It was later determined that a sulfur recovery unit failed to capture
hydrogen sulfide that was at one point 562 times the federally allowed limit. In a statement,
a spokesperson for the Limetree Bay Refinery acknowledged that there had been an
"operating upset" overnight and into the early morning hours that had created a strong odor
detectable outside the facility. Further, the refinery's executive management team issued
an apology "for the impact to the public" of the incident.

*COTTON, BEECHER, ET. AL. V. LIMETREE BAY VENTURES, LLC, ET. AL. (CLASS ACTION),* CIVIL NO.
**CLASS ACTION COMPLAINT**
Page 15

58.     The U.S. Virgin Islands Department of Planning and Natural Resources initially stated that the smell associated with the flare was due to "an exceedance of hydrogen sulfide" at the refinery. But Defendants claimed that the hydrogen sulfide was sent to a flaring unit where it was "safely burned" and converted into sulfur dioxide. Nonetheless, in high concentrations, both sulfur dioxide and hydrogen sulfide can be harmful and even deadly to humans and can cause eye irritation, difficulty breathing, and comas.

59.     As a result of the April 23 Incident, multiple St. Croix schools and businesses were forced to shut down, and U.S. Virgin Islands officials issued stay-indoors orders. Further, the island's Covid-19 vaccination center was forced to close.

60.     Following the April 23 Incident, Defendants recklessly chose to continue operating the Limetree Bay Refinery.

61.     On April 30, 2021, the EPA issued a notice of violation to Limetree Terminals, LLC for alleged violations of the Clean Air Act for failing to operate five sulfur dioxide monitors in the surrounding communities of Christiansted on St. Croix, U.S. Virgin Islands, and the associated weather tower on the facility grounds.

62.     Still, Defendants recklessly chose to continue operating the Limetree Bay Refinery.

63.     On May 5, 2021, the Limetree Bay Refinery experienced yet another severe incident that tragically affected the surrounding communities, including thousands of St. Croix men, women, and children. This time, a "gaseous leak" resulted in at least 200 known reports from residents complaining of the odor and serious health effects including

*COTTON, BEECHER, ET. AL. V. LIMETREE BAY VENTURES, LLC, ET. AL. (CLASS ACTION),* CIVIL
NO.
**CLASS ACTION COMPLAINT**
Page 16

"[n]ausea, vomiting, stomach aches, itching, irritated eyes, and rash" (hereafter, the "May 5

Incident").

64.     While St. Croix does not currently have a fully operational hospital, at least

nine residents visited emergency rooms because of the May 5 Incident. Many others

sought treatment from private providers.

65.     In addition, local schools were forced to shut down and send children home

for the second time in less than a month.

66.     Defendants acknowledged that refinery maintenance activity had resulted in

"light hydrocarbon odors" from an area west of the facility, and that there was the potential

for more odors while maintenance is completed.

67.     Still, Defendants recklessly chose to continue operating the Limetree Bay

Refinery.

68.     On May 12, 2021, the Limetree Bay Refinery experienced yet another severe

incident affecting the local communities when it "spewed oil and sulfur dioxide into the air,"

showering and raining oil on neighborhoods and local residents and their properties

(hereafter, the "May 12 Incident").

69.     Ventures LLC has acknowledged that the most recent flare incident resulted

in the "release of oil droplets which traveled directly west" and affected the nearby

residential community of Enfield Green and other industrial sites.

70.     The EPA called the May 12 Incident "a serious incident that led to

exceedance of the emission limit for sulfur dioxide, a toxic gas."

*COTTON, BEECHER, ET. AL. V. LIMETREE BAY VENTURES, LLC, ET. AL. (CLASS ACTION),* CIVIL NO.
**CLASS ACTION COMPLAINT**
Page 17

71.     In the wake of the May 12 Incident, the Virgin Islands Territorial Emergency Management Agency warned residents about a "gaseous odor" and urged those with respiratory illnesses to stay inside.

**The EPA Response to the May 12 Incident**

72.     On May 14, 2021, the EPA ordered Limetree Terminals, LLC and Limetree Refining, LLC to pause all operations at the refinery due to "multiple improperly conducted operations that present an imminent risk to public health."

73.     The EPA is empowered to take this action under Clean Air Act Section 303, "when an entity's actions are substantially endangering public health, welfare, or the environment."

74.     Further, in a press release announcing its decision, the EPA noted that "Limetree Bay is located in a community that is disproportionately affected by environmental burdens and its repeated incidents raise significant environmental justice concerns, which are a priority for EPA."

75.     The EPA noted at least four recent incidents at the Limetree Bay Refinery that have had an immediate and significant health impact on people and their property.

76.     Despite the EPA shutdown order, Defendants continued to operate the refinery to burn off fuel in the stacks, which caused a discharge of hydrogen sulfide from the flares resulting in a noxious odor that affected residents and businesses west of the refinery on May 14, 2021.

77.     Defendants have attempted to falsely represent that they are not responsible for those noxious odors, despite the EPA finding the contrary.

*COTTON, BEECHER, ET. AL. V. LIMETREE BAY VENTURES, LLC, ET. AL. (CLASS ACTION)*, CIVIL NO.
**CLASS ACTION COMPLAINT**
Page 18

78.     The EPA's temporary shutdown order requires Defendants to pause all refining operations at the facility, "arrange for an independent audit of the facility operations and submit a plan for EPA's review and approval that addresses the auditors' recommendations for corrective measures at the refinery."

79.     This EPA order will remain in effect for 60 days unless it is extended through the United States' filing of a civil action. In addition, the EPA plans to conduct several sets of inspections at the Limetree Bay Refinery over the coming months to focus on the refinery's compliance with multiple environmental statutes.

80.     On its page dedicated to Limetree Bay Terminals and Limetree Bay Refining LLC, the EPA referenced its May 14 Order and stated: "Recent air emission incidents at and near Limetree Bay are unacceptable. EPA is working to lend relief and assistance to this community, which in recent months has experienced incidents that have been unsettling and have even made some people sick."

**<u>Community Impact</u>**

81.     The Contamination Incidents have had and continue to have a far-reaching impact on the people living and working near the Limetree Bay Refinery, the majority of whom are Black or Latino, and many of whom are poor.

82.     At a virtual town hall meeting held on May 13, 2021, St. Croix resident ChenziRa Davis-Kahina stated emphatically, "[o]ur children are suffering. This is becoming uncomfortable to a point that we have to put out a hashtag like, 'We can't breathe.' We have to put out hashtags like, 'Stop killing us.' We have to put out hashtags to get people to hear what's happening here in a place that's supposed to be America's paradise."

*COTTON, BEECHER, ET. AL. V. LIMETREE BAY VENTURES, LLC, ET. AL. (CLASS ACTION),* CIVIL NO.
**CLASS ACTION COMPLAINT**
Page 19

83.     Jennifer Valiulis, who directs the St. Croix Environmental Association, underscored the effect of the numerous contamination incidents on the local community and the need for immediate action stating, "[l]ately we are seeing incidents happening nearly daily with this refinery: Fires, flares, spills, noxious emissions, oil raining down into neighborhoods. Each one of these events has impacted our community in disastrous ways — severe illness, loss of food, loss of drinking water. At some point, we need to say that enough is enough and demand accountability from Limetree."

84.     Island residents such as Plaintiffs are desperate for answers and relief. The St. Croix Environmental Association noted "[w]e are receiving more and more calls each day from people that are frustrated with the lack of information and desperate for some relief from the air pollution that is making them sick."

85.     According to Frandelle Gerard, a local business leader and the executive director of the Crucian Heritage and Nature Tourism Foundation, "People are suffering, hospital admissions are up, and we don't know how long this will continue."

86.     In issuing its May 14 Order, EPA noted the significant health impact that exposure to certain Refinery Contaminants will have on the people of St. Croix. In particular, with respect to hydrogen sulfide, exposure to even low concentrations is known to cause irritation to the eyes, nose, or throat and may cause difficulty in breathing for some asthmatics. People exposed to high concentrations of hydrogen sulfide can suffer respiratory distress or arrest and neurological effects.

*COTTON, BEECHER, ET. AL. V. LIMETREE BAY VENTURES, LLC, ET. AL. (CLASS ACTION),* CIVIL
NO.
**CLASS ACTION COMPLAINT**
Page 20

87.     Similarly, exposure to very high levels of sulfur dioxide is considered immediately dangerous to life and health. In addition, burning of the nose and throat, breathing difficulties, and severe airway obstructions may occur.

88.     Moreover, the oil released as a result of the Contamination Incidents is likely composed of hydrocarbons.  Adverse health impacts been associated with the inhalation or ingestion of, or dermal contact with, petroleum hydrocarbons or residue or water effected by petroleum hydrocarbons.  Short-term exposures have caused skin and eye irritation, while longer term oral exposures have shown liver effects. In addition, some oil constituents have been classified as known or possible carcinogens.

**Plaintiff Beecher Cotton's Allegations**

89.     Plaintiff Cotton is a citizen of St. Croix and a homeowner who lives approximately one half-mile from the Limetree Bay Refinery.

90.     On February 4, 2021, Cotton was at his home when he saw flames and heard extremely loud noises coming from the refinery.

91.     In the beginning of March 2021, a friend who worked at the Limetree Bay Refinery suggested that Cotton check his home's roof for oil. When he checked his roof, Cotton discovered that it was covered with droplets of oil. In addition, Cotton also found oil on his car parked outside his home.

92.     Approximately two weeks after the February 4 Incident, representatives from the refinery came to Cotton's home and, in an apparent effort to remove the oil contamination, washed his car, disconnected his gutters, and pressure washed his roof. They also discovered oil in Cotton's cistern used to obtain water to shower and feed his

*COTTON, BEECHER, ET. AL. V. LIMETREE BAY VENTURES, LLC, ET. AL. (CLASS ACTION),* CIVIL
NO.
**CLASS ACTION COMPLAINT**
Page 21

sheep. Cotton believes that the oil may have seeped into the sealant and concrete around

his cisterns. After a company representative rejected Cotton's request to have his cisterns

re-tested, Cotton had the cisterns drained and cleaned.

93.      Cotton also believes that oil and related contaminants have seeped into his

soil as a result of the Contamination Incidents. This is particularly concerning to Cotton

because he grows fruit and avocadoes on his property that he trades with his neighbors.

94.      Following their inspection and ineffective attempt to remediate the damage to

Cotton's property, a representative from the refinery attempted to convince Cotton to sign a

release of all legal claims relating to the contamination (including bodily harm and property

damage) in exchange for $2,000. Cotton refused to sign the release.

95.      In addition to the contamination of his property, Cotton has also suffered

physical injuries because of the Contamination Incidents. In particular, Cotton asserts that

hydrocarbons emitted from the refinery produce a very terrible and foul smell that has

caused his eyes to water severely and become extremely itchy for two to four days. At one

point, Cotton's eyes were swollen shut, his face became red, and he was bedridden as a

result of his reaction to the Contamination Incidents.  In addition to these physical reaction,

Cotton has also suffered from lack of sleep, stress, and other psychological damage as a

result of loud noises coming from the refinery in the middle of the night.

96.      According to Cotton, the effects of Defendants' conduct is not simply confined

to his home and person. The impact of the contamination, including extensive sulfuric

gases, can be felt as far away as Frederiksted, nearly ten miles from the Limetree Bay

Refinery.  Cotton believes that, ultimately, thousands of people have had their lives turned

*COTTON, BEECHER, ET. AL. V. LIMETREE BAY VENTURES, LLC, ET. AL. (CLASS ACTION),* CIVIL NO.
**CLASS ACTION COMPLAINT**
Page 22

upside down by the Contamination Incidents, as evidenced by repeated school and business closures and disruptions, widespread property damage, and increased admissions at local hospitals of people suffering from the health effects of the Defendants' conduct.

**<u>Plaintiff Pamela Colon's Allegations</u>**

97.     Plaintiff Colon is a citizen of St. Croix, and on May 13, 2021, was called by the Virgin Islands Bureau of Motor Vehicles (BMV) to pick up her REAL ID.

98.     Colon drove past the Limetree Bay Refinery on her way to the BMV because the public was informed refining operations had ceased.

99.     Colon understood this to mean there would be no more releases of pollutants into the air, and it would be safe to drive to the western part of the island where the BMV is located.

100.     As Colon approached the vicinity of Gertrude's restaurant—located near Limetree Bay Refinery—she began to smell a metallic scent, and both eyes started to water and become itchy.

101.     As Colon headed further west past Limetree Bay Refinery, she experienced a sharp stabbing pain behind her left eye and starting coughing.

102.     After the coughing started, it soon became uncontrolled, Colon began to feel nauseous.

103.     Colon, who has asthma, parked at the BMV, and immediately used her Ventalin and Flovent inhalers.

*COTTON, BEECHER, ET. AL. V. LIMETREE BAY VENTURES, LLC, ET. AL. (CLASS ACTION),* CIVIL NO.
**CLASS ACTION COMPLAINT**
Page 23

104.    Colon entered a fully airconditioned area at the BMV, and her symptoms temporarily abated except the watery eyes.

105.    On the way back home, heading east, Colon took another route, Queen Mary Highway, hoping to escape the symptoms she experienced.

106.    However, while heading east, despite not smelling anything, she again became nauseous and experienced itchy and watery eyes as she approached the La Reine Shopping Center.

107.    Colon experienced physical symptoms much worse than before, and the stabbing pain behind the left eye was unbearable.  Her face also became swollen.

108.    Colon had to immediately go home to remove and wash her clothes and take a shower.

109.    It took 24 hours before Colon was able to experience some relief from the physical symptoms and suffers stress and emotional distress from the experience and the worry of long-term health impacts.

**Plaintiff Sirdina Isaac-Joseph's Allegations**

110.    Plaintiff Isaac-Joseph is a citizen of St. Croix and a homeowner who lives downwind from the Limetree Bay Refinery in the Mount Pleasant, Fredricksted neighborhood.

111.    Isaac-Joseph, for weeks, experienced watery and itchy eyes, shortness of breath, headaches, and nausea because of the foul odor released into the air from the Limetree Bay Refinery.

*COTTON, BEECHER, ET. AL. V. LIMETREE BAY VENTURES, LLC, ET. AL. (CLASS ACTION),* CIVIL NO.
**CLASS ACTION COMPLAINT**
Page 24

112.    Isaac-Joseph, who suffers from asthma, had to use her Albuterol inhaler more than usual.

113.    Some days the foul smell was so bad, Isaac-Joseph had to leave her home and head eastward to escape, sometimes for several hours.

114.    When she returned home, she had to close all windows and doors and run the air-conditioning, which caused her to incur increased electrical costs.

115.    Plaintiff Isaac-Joseph is a teacher who teaches her students remotely. On more than one occasion, she was forced to leave home, head east away from the noxious odor, and use her cell phone to continue to teach her students.

116.    Plaintiff Isaac-Joseph noted a black substance, appearing to be oil residue on her roof and cars.

117.    In addition to the physical symptoms, Plaintiff Isaac-Joseph suffers stress and emotional distress from the experience and the worry of long-term health impacts.

**Plaintiff Esther Clifford's Allegations**

118.    Plaintiff Clifford is a citizen of St. Croix and owns and resides at 128 Estate Diamond.

119.    Clifford is retired and home most of the day and, for weeks, experienced burning inside her nostrils, itchy, watery eyes, and headaches because of the foul odor.

120.    Clifford had to buy air purifiers, Odo Ban spray, and Lysol to alleviate the foul and horrible smell.

121.    There was also a dark, brown mist on her house, cars, and in the yard.

*COTTON, BEECHER, ET. AL. V. LIMETREE BAY VENTURES, LLC, ET. AL. (CLASS ACTION),* CIVIL
NO.
**CLASS ACTION COMPLAINT**
Page 25

122.    Representatives from the refinery came to Plaintiff's residence and informed her that the mist was oil.

123.    A representative who identified himself as "Victor" walked around Plaintiff's property and took pictures.

124.    Another representative, "Tony," filled out a questionnaire that asked for Plaintiff's name, email address, mail address, and telephone number.

125.    "Tony" informed Plaintiff that he would submit his report to the necessary individuals and someone else would contact her, but no one has to date.

126.    Representatives delivered cases of water for Plaintiff to use because her water supply was contaminated with oil.

127.    In addition to the physical symptoms, Plaintiff Clifford suffers stress and emotional distress from the experience and the worry of long-term health impacts.

**Plaintiff Sylvia Browne's Allegations**

128.    Plaintiff Brown is a citizen of  St. Croix and owns and resides at 18 Clifton Hill.

129.    There are two homes on that property.

130.    Plaintiff experienced nausea, upset stomach, fatigue and left her home many times to escape the foul and noxious odors.

131.    Representatives from the refinery inspected Plaintiff's home and found oil on the roof, cars, and in the cistern.

132.    The presence of oil was so extensive that in an apparent effort to remove the oil contamination, cleaned the roof and walls outside both houses on the property.

*COTTON, BEECHER, ET. AL. V. LIMETREE BAY VENTURES, LLC, ET. AL. (CLASS ACTION),* CIVIL NO.
**CLASS ACTION COMPLAINT**
Page 26

133.    Representatives also emptied both cisterns, cleaned them, and refilled them with water.

134.    Plaintiff also suffered damage to her fruit trees located in her yard.

135.    In addition to the physical symptoms, Plaintiff Sylvia Browne suffers stress and emotional distress from the experience and the worry of long-term health impacts.

**Plaintiff Alvina Jean-Marie Ilarraza's Allegations**

136.    Plaintiff Ilarraza is a citizen of St. Croix and rents a home located at 305 Enfield Green.

137.    The foul and noxious odor from the refinery forced Plaintiff to evacuate her home for two days and check in to King Christian Hotel in Christiansted—the town on the eastern part of the island.

138.    Plaintiff suffered nausea and headaches because of the foul odor from the refinery.

139.    To date, Plaintiff has been unable to return to her usual routine of sitting and relaxing on her porch because of the poor air quality and the unknown effect it will have on her health long-term.

140.    In addition to the physical symptoms, Plaintiff Ilarraza suffers stress and emotional distress from the experience and the worry of long-term health impacts.

## CLASS ACTION ALLEGATIONS

141.    Plaintiffs bring this action individually and as a class action, pursuant to VI CIV. PRO RULE 23(a), 23(b)(2), 23(b)(3) and/or 23(c)(4). Specifically, the Class is defined as all persons or entities who have suffered injuries and/or damages because of the

*COTTON, BEECHER, ET. AL. V. LIMETREE BAY VENTURES, LLC, ET. AL. (CLASS ACTION),* CIVIL NO.
**CLASS ACTION COMPLAINT**
Page 27

Contamination Incidents at the Limetree Bay Refinery. In addition, Plaintiffs allege a separate medical monitoring class on behalf of all persons who were exposed to the contaminants at issue described herein.

142.   Excluded from the Classes ("collectively, the "Class") are Defendants and their employees, members, officers, and directors; and the Judge(s) assigned to this case.

143.   Plaintiffs reserve the right to redefine the Class before class certification, divide the Class into separate classes, or propose separate subclasses to the Court for certification, based upon discovery in the lawsuit.

144.   The rights of each Class Member were violated in a similar fashion based upon Defendants' uniform actions.

145.   This action has been brought and may be properly maintained as a class action for the following reasons.

146.   <u>Numerosity</u>. The proposed Class Members are so numerous that their individual joinder is impracticable. Plaintiffs are informed and believe that the proposed Class contains at least one thousand individuals and/or entities. The Class is, therefore, sufficiently numerous to make joinder impracticable, if not impossible.

147.   <u>The Existence and Predominance of Common Questions of Fact and Law</u>. In this litigation, common questions of law and fact exist as to all Class Members, which common questions predominate over any questions affecting only individual Class members. These common legal and factual questions include, without limitation:

      a.      Whether Defendants owed a duty to Plaintiff and the Class;

*COTTON, BEECHER, ET. AL. V. LIMETREE BAY VENTURES, LLC, ET. AL. (CLASS ACTION),* CIVIL NO.
**CLASS ACTION COMPLAINT**
Page 28

b.      Whether Defendants breached any duties owed to Plaintiff and the Class;

c.      Whether Defendants were negligent in failing to properly maintain and operate the Limetree Bay Refinery, including without limitation, since its reopening;

d.      Whether Defendants were reckless in failing to properly maintain and operate the Limetree Bay Refinery, including without limitation, since its reopening;

e.      Whether the Limetree Bay Refinery constituted a public nuisance;

f.      Whether the Limetree Bay Refinery constituted a private nuisance;

g.      Whether the contamination that resulted from the Contamination Incidents constituted a trespass to the Class Members;

h.      Whether Class Members are entitled to medical monitoring and early detection of disease;

i.      The appropriate nature of class-wide equitable relief; and

j.      The appropriate measurement of restitution and/or measure of damages to Plaintiffs and the Class Members.

148.    <u>Typicality</u>. Plaintiffs' claims are typical of the Class Members' claims who suffered damages because of the Contamination Incidents.

149.    <u>Adequacy</u>. Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interests of the Class that they seek to represent; they have retained counsel competent and highly experienced in complex class action litigation, and they intends to prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiffs and their counsel.

*COTTON, BEECHER, ET. AL. V. LIMITREE BAY VENTURES, LLC, ET. AL. (CLASS ACTION),* CIVIL
NO.
**CLASS ACTION COMPLAINT**
Page 29

150.    Superiority. A class action is superior to other available means of fair and
efficient adjudication of the claims of Plaintiffs and the Class. The injuries suffered by each
Class Member are relatively small compared to the burden and expense of individual
prosecution of the complex and extensive litigation necessitated by Defendants' conduct. It
would be virtually impossible for Class Members to individually and effectively redress the
wrongs done to them. Even if Class Members could afford such individual litigation, the
court system could not. In addition, individualized litigation presents a potential for
inconsistent or contradictory judgments. Individualized litigation also increases the delay
and expense to all parties and the court system, presented by the case's complex legal and
factual issues. By contrast, the class action device presents far fewer management
difficulties and provides the benefits of single adjudication, an economy of scale, and
comprehensive supervision by a single court.

## CAUSES OF ACTION

### COUNT I: Negligence

151.    Plaintiffs hereby adopt by reference each and every allegation in paragraphs
1 through 151 as if fully set out herein.

152.    The actions of Defendants were negligent.

153.    Defendants owned and/or operated the Limetree Bay Refinery, and are
responsible for its operations.

154.    Defendants failed to properly store, use, refine, and/or dispose of oil and
other chemicals, toxins, and particulates.

*COTTON, BEECHER, ET. AL. V. LIMETREE BAY VENTURES, LLC, ET. AL. (CLASS ACTION),* CIVIL
NO.
**CLASS ACTION COMPLAINT**
Page 30

155.   Defendants failed to insure that the refinery was safe to reopen when they knew or should have known it was not.

156.   Defendants' conduct fell below the standard of care of a reasonable property owner and/or operator in similar circumstances.

157.   Defendants knew and/or should have known that its failure to properly store, use, refine, and/or dispose of oil and other chemicals, toxins, and particulates at the Limetree Bay Refinery would allow these dangerous materials to contaminate nearby neighborhoods and cause their residents personal injuries and property damages, including but not limited to diminution in value.

158.   Defendants' negligence caused both physical personal injury and real and personal property damage that also resulted in emotional distress and anxiety to Plaintiff and Class Members.

159.   As a direct and proximate result of Defendants' conduct as set forth herein, Plaintiffs and Class Members have suffered damages.

## Count II-Negligence *Per Se*

160.   Plaintiffs hereby adopt by reference each and every allegation in paragraphs 1 through 160 as if fully set out herein.

161.   The actions of Defendants as set forth herein constitute negligence *per se*.

162.   Defendants have violated 28 V.I.C. §133 (Private Nuisance) and 12 V.I.C. 201 (Virgin Islands Air Pollution Control Act), *et seq*.

163.   The purposes of both statutes are to protect the interests of Plaintiffs and the Class Members.

*COTTON, BEECHER, ET. AL. V. LIMETREE BAY VENTURES, LLC, ET. AL. (CLASS ACTION),* CIVIL NO.
**CLASS ACTION COMPLAINT**
Page 31

164.    As a direct and proximate result of Defendants' conduct as set forth herein, Plaintiffs and Class Members have suffered damages.

## **COUNT III: Abnormally Dangerous Condition**

165.    Plaintiffs hereby adopt by reference each and every allegation in paragraphs 1 through 165 as if fully set out herein.

166.    The actions of Defendants as set forth herein constitute maintaining an abnormally dangerous condition.

167.    The Limetree Bay Refinery is located just south of certain residential communities, including the community in which Plaintiff resides, or work. Further the natural resources of the U.S. Virgin Islands are particularly sensitive and precious.

168.    Defendants' use, storage, refining, and/or disposal of oil and other chemicals, toxins, and particulates was solely for Defendants' business purposes.

169.    Defendants knew and understood that there was a high risk that the oil and other chemicals, toxins, and particulates could contaminate nearby neighborhoods and cause their residents' personal injuries and property damage, including but not limited to the diminution of value.

170.    Defendants' use, storage, refining, and/or disposal of oil and other chemicals, toxins, and particulates at the Limetree Bay Refinery did in fact cause serious harm to Plaintiffs' and Class Members' person, chattel, and property, including both real and personal property.

171.    As a direct and proximate result of Defendants' conduct as set forth herein, Plaintiffs and Class Members have suffered damages.

*COTTON, BEECHER, ET. AL. V. LIMETREE BAY VENTURES, LLC, ET. AL. (CLASS ACTION),* CIVIL
NO.
**CLASS ACTION COMPLAINT**
Page 32

## COUNT IV: Public Nuisance

172.    Plaintiffs hereby adopt by reference each and every allegation in paragraphs
1 through 172 as if fully set out herein.

173.    The actions of Defendants constitute a public nuisance.

174.    Specifically, Plaintiffs' and Class Members' homes, bodies, and emotional
well-being have been damaged by Defendants' release of oil and other chemicals, toxins,
and particulates into their neighborhoods. However, the public at large has not endured
such damages.

175.    Plaintiffs and the Class are entitled to damages as a result thereof.

176.    Moreover, Plaintiffs and the Class are further entitled to an injunction requiring
Defendants to cease and desist all activities that result in the release of pollutants, and
further to an injunction requiring Defendants to remove and remediate all pollutants that
have been allowed to escape Defendants' premises.

## COUNT V: Private Nuisance/Trespass

177.    Plaintiffs hereby adopt by reference each and every allegation in paragraphs
1 through 177 as if fully set out herein.

178.    Defendants' actions constitute a private nuisance and/or a trespass.

179.    Defendants' discharge of oil and other chemicals, toxins, and particulates, into
Plaintiffs' and Class Members' residences and other properties, interfered with Plaintiffs'
and Class Members' use and enjoyment of their homes and properties, damaged their
homes and properties, and caused personal injuries.

*COTTON, BEECHER, ET. AL. V. LIMETREE BAY VENTURES, LLC, ET. AL. (CLASS ACTION),* CIVIL NO.
**CLASS ACTION COMPLAINT**
Page 33

180.    By so doing, Defendants have wrongfully and unreasonably interfered with Plaintiffs' and Class Members' private use and enjoyment of their homes and properties.

181.    As a result, Plaintiffs and the Class have been damaged as alleged herein.

## COUNT VI: Statutory Private Nuisance

182.    Plaintiffs hereby adopt by reference each and every allegation in paragraphs 1 through 182 as if fully set out herein.

183.    Defendants' actions constitute a private nuisance in violation of 28 V.I.C. §331.

184.    Defendants' discharge of oil and other chemicals, toxins, and particulates, into Plaintiffs' and Class Members' residences and other properties, interfered with Plaintiffs' and Class Members' use and enjoyment of their homes and properties, damaged their homes and properties, and caused personal injuries.

185.    By so doing, Defendants have wrongfully and unreasonably interfered with Plaintiffs' and Class Members' private use and enjoyment of their homes and properties.

186.    As a result, Plaintiffs and the Class have been damaged as alleged herein.

## Count VII-Violation of Virgin Islands Air Pollution Control Act

187.    Plaintiffs hereby adopt by reference each and every allegation in paragraphs 1 through 187 as if fully set out herein.

188.    Defendants' actions constitute a violation of 12 V.I.C. § 201, et. seq.

*COTTON, BEECHER, ET. AL. V. LIMETREE BAY VENTURES, LLC, ET. AL. (CLASS ACTION),* CIVIL NO.
**CLASS ACTION COMPLAINT**
Page 34

189.   The "Air Pollution Control Act" 's "declaration of purpose" indicates that it seeks "to promote health, safety and welfare" and "to prevent injury to human, plant and animal life, and property."

190.   The purpose of the Act is to protect residents of the Virgin Islands from emissions of pollutants

191.   Plaintiffs' and Class Members are among the class of persons the APCA was meant to protect.

192.   Defendants' discharge of oil and other chemicals, toxins, and particulates, into Plaintiffs' and Class Members' residences violated the Air Pollution Control Act.

193.   As a result, Plaintiffs and the Class have been damaged as alleged herein.

## COUNT VIII: Medical Monitoring

194.   Plaintiffs hereby adopts by reference each and every allegation in paragraphs 1 through 194 as if fully set out herein.

195.   Plaintiffs and Class Members were significantly exposed to oil and other chemicals, toxins, and particulates proven hazardous to health because of Defendants' repeated failure to prevent the discharge of such substances since the February 2021 reopening of the Limetree Bay Refinery, including the Contamination Incidents referenced herein.

196.   The exposure to these dangerous substances is such that Plaintiff and the Class Members have been placed at an increased risk of contracting latent illness and

*COTTON, BEECHER, ET. AL. V. LIMETREE BAY VENTURES, LLC, ET. AL. (CLASS ACTION),* CIVIL
NO.
**CLASS ACTION COMPLAINT**
Page 35

disease, including but not limited to cancer, and as such, require medical monitoring which

Defendants are responsible for providing and paying for.

197.   Monitoring and testing procedures for cancer and other illnesses associated

with exposure to oil and other chemicals, toxins, and particulates exist which make the

early detection and treatment of the disease possible and beneficial.

198.   As a result, the Court should establish a Court-supervised and administered

trust fund and medical monitoring regime to compensate Plaintiffs and Class Members for

their economic damages.

## COUNT IX: Negligent Infliction of Emotional Distress

199.   Plaintiffs hereby adopt by reference each and every allegation in paragraphs

1 through 199 as if fully set out herein.

200.   The actions of Defendants negligently inflicted emotional distress on Plaintiffs

and Class Members.

201.   Defendants owed Plaintiffs and Class Members a duty of care to ensure that

they did not suffer from serious emotional distress, which duty arose by operating an

abnormally hazardous condition, through the common law, and through statutory and

regulatory obligations to prevent hazardous material from escaping from the Limetree Bay

Refinery.

202.   Defendants breached their duty to Plaintiffs and the Class.

203.   As a direct and proximate result of Defendants' breach, Plaintiffs and Class

Members suffered severe emotional injury.

*COTTON, BEECHER, ET. AL. V. LIMETREE BAY VENTURES, LLC, ET. AL. (CLASS ACTION),* CIVIL NO.
**CLASS ACTION COMPLAINT**
Page 36

204.    As a result, Plaintiffs and the Class have been damaged as alleged herein.

## Count X-Intentional Infliction of Emotional Distress

205.    Plaintiffs hereby adopt by reference each and every allegation in paragraphs 1 through 205 as if fully set out herein.

206.    The actions of Defendants constitute the intentional infliction of emotional distress on Plaintiffs and Class Members.

207.    In the Virgin Islands, a claim of IIED requires a showing that a party: (1) intentionally or recklessly; (2) engaged in extreme and outrageous conduct that exceeds all possible bounds of decency such that it is regarded as atrocious and utterly intolerable in a civilized society; (3) that caused the plaintiff to suffer severe emotional distress.

208.    Defendants know and understand that exposure to discharge of oil and other chemicals, toxins, and particulates, and other particulates and hazardous substances presented and continues to present serious risks to the health and property of thousands of St. Croix residents.

209.    Defendants knew that before Defendants' ownership, control, and operation of the Limetree Bay Refinery, the property was owned and operated by Hovensa, LLC, a joint venture between Hess Corporation and Petroleos de Venezuela, the national oil company of Venezuela, and before that by HOVIC, a wholly-owned subsidiary of the Hess Corporation formerly known as Amerada Hess.

*COTTON, BEECHER, ET. AL. V. LIMETREE BAY VENTURES, LLC, ET. AL. (CLASS ACTION),* CIVIL NO.
**CLASS ACTION COMPLAINT**
Page 37

210.   Defendants knew that under HOVIC and  Hovensa, the refinery exceeded allowable emissions of known harmful substances, including nitrogen oxide, sulfur dioxide, volatile organic compounds (or VOCs), and benzene.

211.   Defendants knew that in 2011, investigators discovered that the pipes carrying the refinery's waste product had been corroding, slowly leaking *more than 43 million gallons of oil into the island's only aquifer*.

212.   Defendants knew that as a result of the massive leak, the U.S. Environmental Protection Agency ("EPA") ordered Hovensa to pay civil penalties of more than $5 million and spend more than $700 million in new pollution controls to protect the public health and resolve Clean Air Act violations in St. Croix. The EPA required Hovensa to implement new and upgraded pollution controls, more stringent emission limits and aggressive monitoring, and leak detection and repair practices to reduce emissions from refinery equipment and process units.

213.   Defendants knew that instead of paying its fines and undertaking the required improvement projects, the Hess Corporation shut down the Hovensa facility in 2012.

214.   Defendants knew of the history of prior emissions at the refinery and their impact on the community.

215.   Defendants knew or should have known that the refinery was not in a proper condition to reopen and that the start-up would result in discharges and dangers to Plaintiffs and Class Members.

216.   As a direct and proximate result of Defendants' actions, Plaintiffs and Class Members suffered severe emotional injury.

*COTTON, BEECHER, ET. AL. V. LIMETREE BAY VENTURES, LLC, ET. AL. (CLASS ACTION),* CIVIL NO.
**CLASS ACTION COMPLAINT**
Page 38

WHEREFORE, Plaintiffs pray for damages, including punitive, as they may appear

and for pre and post-judgment interest and costs and fees and such other relief as this

Court deems fair and just.

LEE J. ROHN AND ASSOCIATES, LLC
Attorneys for Plaintiffs

DATED:  May 20, 2021                        BY:    /s/ Lee J. Rohn
Lee J. Rohn, Esq.
VI Bar No. 52
1108 King Street, Suite 3 (mailing)
56 King Street, Third Floor (physical)
Christiansted, St. Croix
U.S. Virgin Islands 00820
Telephone: (340) 778-8855
lee@rohnlaw.com



**FILED**
June 10, 2021
SX-2021-CV-00414
TAMARA CHARLES
CLERK OF THE COURT

(CIVIL ACTION – ORIGINAL)

# SUMMONS

## IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

BEECHER COTTON, PAMELA COLON, SIRDINA ISAAC-JOSEPH, ESTHER CLIFFORD, SYLVIA BROWNE, ALVINA JEAN-MARIE ILARRAZA, individually and on behalf of all others similarly situated,

CIVIL NO. SX-2021-CV-00414

Plaintiff,

**CLASS ACTION COMPLAINT**

**ACTION FOR DAMAGES**

v.

**JURY TRIAL DEMANDED**

LIMETREE BAY VENTURES, LLC, LIMETREE BAY REFINING, LLC, LIMETREE BAY TERMINALS, LLC, ARCLIGHT CAPITAL PARTNERS, LLC, FREEPOINT COMMODITIES, LLC, EIG GLOBAL ENERGY PARTNERS, LLC, BP PRODUCTS NORTH AMERICA, INC. and JOHN DOES 1-10.,

Defendants.

TO:      Capitol Services, Inc., as the Registered Agent for Limetree Bay Ventures, LLC

ADDRESS:   1675 South State Street, Ste B. Dover, DE 19901

Within the time limited by law (see note below) you are hereby required to appear before this Court and answer to a complaint filed against you in this action and in case of your failure to appear or answer, judgment by default will be taken against you as demanded in the complaint for damages.

Witness my hand and the Seal of the Court this 10th day of June, 2021.

/s/ Lee J. Rohn
Lee J. Rohn, Esquire
VI Bar No. 52
Lee J. Rohn and Associates, LLC
1108 King Street, Suite 3 (mailing)
56 King Street, Third Floor (physical)
Christiansted, VI  00820
Telephone: (340) 778-8855
Facsimile: (340) 773-2954

Ms. Tamara Charles,
Clerk of the Court

By: _____
Court Clerk II

(CIVIL ACTION – ORIGINAL)

Note:    The defendant, if served personally, is required to file his answer or other defense with the Clerk of this Court, and to serve a copy thereof upon the plaintiff's attorney within twenty (20) days after service of this summons, excluding the date of service.   The defendant, if served by publication or by personal service outside the jurisdiction, is required to file his answer or other defense with the Clerk of this Court, and to serve a copy thereof upon the attorney for the plaintiff within thirty (30) days after the completion of the period of publication or personal service outside of the jurisdiction.

(CIVIL ACTION – ORIGINAL)

## RETURN OF SERVICE

I hereby certify that I received this summons on the _____ day of
_____, 2021, and that thereafter, on the _____ day of _____,
2021, I did serve the same on the above-named defendant,
_____ by showing h _____ this original
and by then delivering to h _____ a copy of the complaint and of the summons which
were forwarded to me attached thereto.

_____
Process Server

_____
Deputy

## RETURN OF NON-SERVICE

I hereby certify that I received this summons on the _____ day of
_____, 2021, and that after making a careful, diligent search, the
Defendant cannot be found in this jurisdiction.

_____
Process Server

_____
Deputy