# IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

| | |
|---|---|
| **CLIFFORD BOYNES, et al.,**<br><br>  Plaintiffs,<br><br>  v.<br><br>**LIMETREE BAY VENTURES, LLC, et al.,**<br><br>  Defendants. | Civil Action No. 2021-0253 |
| **HELEN SHIRLEY, et al.,**<br>  Plaintiffs,<br>  v.<br>**LIMETREE BAY VENTURES, LLC, et al.,**<br>  Defendants. | Civil Action No. 2021-0259 |
| **FRANCIS E. CHARLES and THERESA J. CHARLES,**<br>  Plaintiffs,<br>  v.<br>**LIMETREE BAY VENTURES, LLC, et al.,**<br>  Defendants. | Civil Action No. 2021-0260 |
| **BEECHER COTTON, et al.,**<br><br>  Plaintiffs,<br>  v.<br>**LIMETREE BAY VENTURES, LLC, et al.,**<br>  Defendants. | Civil Action No. 2021-0261 |

**MEMORANADUM OF LAW IN SUPPORT OF MOTION TO STAY
ORDERS RELATED TO PRELIMINARY INJUNCTION PENDING APPEAL**

Defendant Limetree Bay Terminals, LLC (d/b/a Ocean Point Terminals) ("Terminals"), by and through its undersigned counsel, respectfully submits this memorandum of law in support of its Motion to Stay Orders Related to Preliminary Injunction Pending Appeal including the First Phase Preliminary Injunction Order issued April 28, 2023 (Civ. No. 2021-0253 ("*Boynes*"), Dkt. No. 284, Civ. No. 2021-0259 ("*Shirley*"), Dkt. No. 139, Civ. No. 2021-0260 ("*Charles*") Dkt. No. 199, Civ. No. 2021-0261 ("*Cotton*"), Dkt. No. 334) (merged into the following July 20, 2023 Orders for purposes of appeal); the Second Phase Preliminary Injunction Order issued July 20, 2023 (*Boynes*, Dkt. No. 388, *Shirley*, Dkt. No.222, *Charles*, Dkt. No. 286, *Cotton*, Dkt. No. 435); and the Order Implementing the Water Distribution Program issued July 20, 2023 (*Boynes*, Dkt. No. 390, *Shirley*, Dkt. No. 224, *Charles*, Dkt. No. 288, *Cotton*, Dkt. No. 437).  For the reasons set forth below, Terminals moves this Court to stay its Orders Related to Preliminary Injunction pursuant to Rules 62(c) and (d) of the Federal Rules of Civil Procedure.  Terminals filed Notices of Appeal of these Orders on August 7, 2023 on the dockets for each case.

**I.    BACKGROUND**

These four putative class action cases arise from four emissions events that occurred between on February 4, 2021 and May 7, 2021 at the St. Croix Refinery ("Refinery"), not owned or operated by Terminals at the time of these events.  Plaintiffs allege the emission events contaminated Plaintiffs' and putative class members' property.  On July 12, 2021, Limetree Bay Refining, LLC ("Refining") and certain affiliated entities (collectively, "Debtors") filed for bankruptcy.  Refining is an entity separate and distinct from Terminals.  On August 10, 2021, the Bankruptcy Court entered a Stipulation and Agreed Order Among the Debtors, the Official Committee of Unsecured Creditors and Certain Class Action Plaintiffs ("Mediation Stipulation")

pursuant to which the *Cotton* Plaintiffs, *Shirley* Plaintiffs, *Boynes* Plaintiffs, Debtors and Committee agreed to a voluntary stay of the federal class actions to allow the parties to mediate certain alleged health and safety issues. The four federal class actions remained stayed through January 31, 2023, when this Court lifted the stay. As a condition of the Mediation Stipulation, the Debtors and Terminals established a water distribution program which provided water to certain residents of St. Croix and would be discontinued in the event of a termination of the mediation or the voluntary stay. Terminals participated in this water distribution program as a condition of the mediation, not because it conceded any role in the release events. Indeed, Refining, not Terminals, maintained operation and control over the flare at issue in these cases. Plaintiffs terminated the voluntary stay and mediation on September 26, 2022, which triggered the termination of the water distribution program.

On January 25, 2023, four months after the termination of the voluntary stay, mediation, and water distribution program, Plaintiffs refiled their requests for injunctive relief. *Boynes*, Dkt. No. 120, *Shirley*, Dkt. No. 33, *Charles*, Dkt. No. 62, *Cotton*, Dkt. No. 156. The Court consolidated the four putative class actions for the limited purpose of proceedings and hearings related to Plaintiffs' motions for injunctive relief. *Boynes*, Dkt. No. 122, *Shirley*, Dkt. No. 31, *Charles*, Dkt. No. 63, *Cotton*, Dkt. No. 160. On February 3, 2023, Plaintiffs filed an Amended Motion for Temporary Restraining Order and Preliminary Injunction. Plaintiffs requested that the Court issue a Temporary Restraining Order and Preliminary Injunction requiring Terminals to remediate the cisterns and property of, and establish a water distribution program for, Plaintiffs and other similarly situated residents. *Boynes*, Dkt. No. 141; *Charles*, Dkt. No. 68; *Cotton*, Dkt. No. 170; *Shirley*, Dkt. No. 41.

On February 2, 2023, this Court issued an Order deciding that Plaintiffs' Amended Motions for Temporary Restraining Order and Preliminary Injunction required two phases of evidentiary hearings – an "entitlement" phase one hearing and, if the Court determined that any such injunctive relief was warranted, a second phase to determine the precise scope and structure of the relief and the appropriate bond. *Boynes*, Dkt. No. 136, *Shirley*, Dkt. No. 42, *Charles*, Dkt. No. 199, *Cotton*, Dkt. No. 196. The first phase hearing was held from March 2-7, 2023. On April 28, 2023, the Court issued its First Phase Memorandum Opinion (*Boynes*, Dkt. No. 285, *Shirley*, Dkt. No. 140, *Charles*, Dkt. No. 200, *Cotton*, Dkt. No. 335) and First Phase Preliminary Injunction Order (*Boynes*, Dkt. No. 284, *Shirley*, Dkt. No. 139, *Charles*, Dkt. No. 199, *Cotton*, Dkt. No. 334) in which the Court found that Plaintiffs had satisfied the four preliminary injunction factors with respect to those Plaintiffs and putative class members who cannot afford to purchase water without trading off other basic necessities. The Court found that Plaintiffs did not demonstrate entitlement to remedial relief.

The second phase hearing was held from June 6-9, 2023. On July 20, 2023, the Court issued its Second Phase Memorandum Opinion, Second Phase Preliminary Injunction Order (*Boynes*, Dkt. No. 388, *Shirley*, Dkt. No.222, *Charles*, Dkt. No. 286, *Cotton*, Dkt. No. 435), and an Order Implementing the Water Distribution Program (*Boynes*, Dkt. No. 390, *Shirley*, Dkt. No. 224, *Charles*, Dkt. No. 288, *Cotton*, Dkt. No. 437). As a part of the Second Phase Preliminary Injunction Order, Plaintiffs were required to post a bond by August 4, 2023, which Plaintiffs did by that date.

II. **ARGUMENT**

  A. **Legal Standard**

A motion for stay is governed by Federal Rule of Civil Procedure 62(c). Rule 62(c) states:

3

> "[w]hen an appeal is taken from an interlocutory or final judgment granting, dissolving, or denying an injunction, the court in its discretion may suspend, modify, restore, or grant an injunction during the pendency of the appeal upon such terms as to bond or otherwise as it considers proper for the security of the rights of the adverse party."

F.R.Civ.P. 65(c).  A court balances the following four factors when considering whether to stay a matter pending appeal:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Republic of Philippines v. Westinghouse Elec. Corp.*, 949 F.2d 653, 658 (3d Cir. 1991) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)).  The first two factors are "the most critical."  *In re Revel AC, Inc.*, 802 F.3d 558, 568 (3d Cir. 2015) (internal quotation marks and modifications omitted).  The court analyzes those factors using a "sliding scale" approach, so that a strong likelihood of success requires a lower showing of irreparable harm, and vice versa.  *Id.* at 569-70.  "[D]epending on how strong a case the stay movant has on the merits, a stay is permissible even if the balance of harms and public interest weigh against holding a ruling in abeyance pending appeal."  *Id.* at 571.  The likelihood of success need not be greater than 50%.  *Id.*; *see also Territorial Court of the Virgin Islands v. Richards*, 674 F. Supp. 180 (D.V.I. 1987) (granting a stay pending appeal where two of the four elements weighed in favor of a stay after determining that appellant's likelihood of success was very and it was unlikely to suffer "explicit" injury absent a stay, but that there was a strong public interest in maintaining status quo).  "[T]hese criteria are similar to those applied to preliminary injunctions.  *Wallace v. Kmart Corp.*, No. 1:02-CV-107, 2010 WL 3632745, at *1 (D.V.I. Sept. 13, 2010).  In order to obtain injunctive relief, the Plaintiffs must establish that "(A) they are likely to succeed on the merits of their claims, (B) they are likely

4

to suffer irreparable harm without relief, (C) the balance of harms favors them, and (D) relief is in the public interest." *Issa v. Sch. Dist. of Lancaster*, 847 F.3d 121, 131 (3d Cir. 2017).  In *Adams v. Freedom Forge Corp.*, the Third Circuit clearly stated that it "do[es] not believe that a court can enter a mass preliminary injunction." 204 F.3d 475, 487 (3d Cir. 2000).  "A preliminary injunction may not be based on facts not presented at a hearing, or not presented through affidavits, deposition testimony, or other documents, about the particular situations of the moving parties." *Id.*

An order for specific performance is an appealable interlocutory order under 28 U.S.C. §1292(a)(1).  *Sheet Metal Workers' Internatl. Assoc. Local 19 v. Herre Bros., Inc.*, 201 F. 3d 231, 238 (3d Cir. 1999).  Terminals meets the four requirements necessary to establish that a stay is warranted.

### B. Terminals Is Likely to Succeed on the Merits

To show a likelihood of success, the moving party must show "a reasonable chance, or probability, of winning."  *Revel,* at 568-69 (internal quotation marks and citations omitted). Terminals need not demonstrate a high probability of reversal on appeal.  Rather, Terminals must show that there are "at a minimum, serious questions going to the merits." *Id.* at 570 (internal quotation marks omitted).  Terminals also must show that the request for a stay is nonfrivolous. *Republic Indus. Inc. v. Central Penn. Teamsters Pension Fund*, 537 F. Supp. 1036, 1037 (E.D. Pa. 1982).  Here, Terminals' request is clearly nonfrivolous because Terminals had no control over the Refinery and the type of injunctive relief requested by Plaintiffs and granted by this Court is an extreme, overbroad measure with no prior precedent.

Terminals has always been a distinct legal entity from Refining for all purposes and the only shared characteristic is the fact that they are located on the same property.[1] Prior to the release events, Terminals sold the Refinery to Refining.[2] Therefore, Refining, not Terminals, owned and operated the Refinery.[3] Plaintiffs have conflated Terminals' and Refining's relationship in an effort to sue Terminals, which is currently the only solvent entity of the two.

Injunctive relief is an extraordinary remedy and Plaintiffs have not met this burden. Terminals was not the owner or operator of the Refinery alleged to have caused Plaintiffs' harm. Despite the fact that Terminals did not cause the alleged harm, Terminals is now being required to establish, fund, and operate a Water Distribution Program which will cost Terminals millions of dollars to execute over an undefined time frame. The total monthly cost estimated for the Bankruptcy Water Program amounted to approximately $254,024.[4] The current Water Distribution Program is contemplated to be much more expansive than the previous program and it can be assumed that the costs will be exponentially higher. Plaintiffs have anticipated that thousands of households will sign up to receive water from Terminals through the Water Program. Using Plaintiffs' supplied per gallon cost of water at $1.60, based on this price, the average yearly cost to provide one household with the requisite water would be $6,988.80. Even applying a low estimate of 1,000 eligible households participating in the Water Program, the cost for one year for the cost of water along would be $6,988,800 (making the anticipated low estimate monthly cost $582,400 for the cost of water alone). This is an unfair cost for Terminals to shoulder, particularly because Terminals did not operate or control the Refinery or the flare in question during the time

---

[1] *See* Declaration of Akeel St. Jean dated February 21, 2023, attached as Exhibit 2 to Limetree Bay Terminals, LLC's Combined Response in Opposition to Plaintiffs' Amended Motions for Preliminary Injunction, *Boynes*, Dkt. No. 168-2.
[2] *Id*.
[3] *Id*.
[4] *See, e.g.*, *Boynes*, Civil Action No. 2021-0253, Dkt. No. 374, Exhibit 2.

of the Release events, and because Plaintiffs failed to present direct evidence of their own individual harm.

Further, despite two phases of hearings, Plaintiffs have not presented evidence demonstrating that any Plaintiff's water or soil is contaminated. Instead they presented a few samples (and even the small subset within that few reflecting a detection of petroleum hydrocarbons is either inconsistent or unlikely to be traced to petroleum products, i.e., a false positive). Throughout the **eight** days of hearings, only one Plaintiff, Margaret Thompson, appeared to testify, which is a telling representation of the limited evidence Plaintiffs have. Notably, Ms. Thompson's cistern water was tested and tested "positive" for a presence of detectable total petroleum hydrocarbons (TPH), an indicator of detectable petroleum hydrocarbons, but further analysis (an examination of the chromatogram for this sample) clearly showed that the TPH did not resemble petroleum, meaning that the TPH could not be attributed to **any** petroleum source, including the Refinery.[5] Soil and swab samples taken from Ms. Thompson's property were non-detect. Plaintiffs presented no other test results reflecting the properties of the other non-plaintiff resident witnesses that testified during the proceedings.

Also, a key element in the Order Implementing the Water Program is that eligible residents must show that they cannot afford to purchase water without trading off other basic necessities. However, Plaintiffs called six residents throughout both hearing phases, none of whom testified that they were trading off necessities in order to buy water. The testimony instead supports Terminals' position that Plaintiffs failed to demonstrate extraordinary harm, let alone any harm.

---

[5] *See* Declaration of Karen J. Murray, PhD dated February 21, 2023, attached as Exhibit 5 to Limetree Bay Terminals, LLC's Combined Response in Opposition to Plaintiffs' Amended Motions for Preliminary Injunction, *Boynes*, Dkt. No. 168-5.

Plaintiffs' expert witnesses' testimony and declarations teemed with shortcomings in their conclusions of the extent of purported contamination. Plaintiffs' experts asserted that samples of cistern water taken west of the Refinery contain petroleum hydrocarbons and baldly concluded that these petroleum hydrocarbons matched the chemicals released by the Refinery's emissions, even though this is an impossible conclusion to make (and nowhere did Plaintiffs' experts present any testimony connecting "positive" test samples to petroleum hydrocarbons from the Refinery). In actuality, approximately 90% of the water samples from Plaintiffs' data did not detect contamination. The three samples that reflected the presence of petroleum hydrocarbons were at levels well below human health safety thresholds. Plaintiffs' soil samples also show no petroleum presence. This testing provided by Plaintiffs' own experts proves Terminals' position: Plaintiffs are not only unentitled to injunctive relief, they have not proven that there is any contamination warranting litigation.

### C. Terminals Will Be Irreparably Injured Absent a Stay

Despite a sheer lack of any evidence of contamination and despite not having control over the Refinery, or the flare from which the releases emitted, Terminals is now being required to establish a Water Distribution Program through which eligible residents are entitled to up to twelve (12) gallons of water per day per household, with a maximum amount per household of eighty-four (84) gallons of water per week. This Water Distribution Program is contemplated to remain in full force and effect during this litigation, which could span several years. Plaintiffs have indicated that they believe thousands of households will sign up for the Water Distribution Program based on the eligibility factors in the Order. Further, the "Covered Area" established within the Order Implementing the Water Program spans close to thirty (30) estates west of the Refinery, many of which Plaintiffs have not provided any evidence were impacted by the releases.

Additionally, there is clear conflation of Terminals and Refining's role with respect to the operation of and control over the Refinery. If the Water Distribution Program is established, residents of St. Croix will continue to conflate the two entities and believe that Terminals is responsible for the alleged contamination. The fact that Terminals participated in the short-lived Bankruptcy Water Program as a condition of the mediation does not mean that it can or should be forced to bear the costs of this Water Distribution Program that currently has no end date. The Bankruptcy Water Program expressly reserved the parties rights on all issues related to the putative class actions, including whether a Water Program was even necessary.[6]

Terminals should not be required to pay **millions of dollars** in establishing, running, and maintaining a water distribution program to potentially thousands of households when there has been no evidence of a water or health crisis warranting such a program.

### D. An Issuance of a Stay Would Not Substantially Injure the Other Parties in These Proceedings

As stated above, Plaintiffs have not met their burden for injunctive relief. Plaintiffs have not provided **any** evidence that the properties of the thousands of unnamed residents have been contaminated with petroleum hydrocarbons released by the Refinery or that any alleged contamination has caused cistern water to be unusable. Additionally, Plaintiffs have not put forth evidence that they are unable to access potable water. Rather, Plaintiffs have put forth resident witnesses who have stated that they have always purchased bottled water, even before the releases[7], or that they still use their cistern water for basic needs, or never used their cistern water to drink

---

[6] *See See* Declaration of Akeel St. Jean dated February 21, 2023, attached as Exhibit 2 to Limetree Bay Terminals, LLC's Combined Response in Opposition to Plaintiffs' Amended Motions for Preliminary Injunction, *Boynes*, Dkt. No. 168-2.

[7] March 2, 2023 Hrg. Tr. at 120:16-21 (Thompson); March 2, 2023 Hrg. Tr. at 78:4-11 (Allen Murphy); March 3, 2023 Hrg. Tr. 108:2-8 (Carino).

even before the releases[8]. Additionally, many homes in St. Croix are connected to WAPA water, which is yet another source of water for those residents.

Further, Plaintiffs waited four (4) months after the termination of the Bankruptcy Mediation and the lifting of the voluntary stay in this Court before reinitiating their requests for injunctive relief. Plaintiffs' delay, combined with the absence of most of the Plaintiffs in either of the injunction proceedings held by the Court, are clear indicators that there was no "emergent" water issue warranting a preliminary injunction.

### E. The Public Interest Lies in Maintaining the Status Quo

Plaintiffs' claims of widespread contamination are misleading and risk causing massive panic. If the Water Distribution Program is put into place it can further add to this fear that there is a human health crisis on St. Croix as a result of the releases, when this has not been proven. The Third Circuit expressly precludes an order of mass injunctive relief based on speculation and not individual harm. *Adams*, 204 F.3d at 487-88. Speculation is at the heart of Plaintiffs' allegations in this litigation. Plaintiffs have speculated, without any evidence, that there is rampant contamination causing cistern water to be unusable. This speculation should not be the basis for such an extreme measure of hardship imposed on Terminals. *See id.* at 488 ("the risk of irreparable harm must not be speculative); *Pallante v. Those Certain Underwriters at Lloyd's, London,* 311 F. Supp. 3d 692, 695 (E.D. Pa. 2018) (stating mere speculation is not sufficient to allow the court to grant preliminary equitable relief); *Weir v. Napiorski*, No. 20-CV-6317, 2021 WL 131653, at *3 (E.D. Pa. Jan. 14, 2021), aff'd, No. 21-1243, 2021 WL 5320855 (3d Cir. Nov. 16, 2021) (finding that mere speculation does not provide the Court with evidence to conclude "that the issuance of extraordinary preliminary injunctive relief is necessary to prevent immediate and irreparable

---

[8] June 6, 2023, Hrg. Tr. at 29:18-21 (Antoine).

injury"); *see Holiday Inns of Am., Inc. v. B&B Corp.*, 409 F.2d 614, 618 (3d Cir. 1969) ("The dramatic and drastic power of injunctive force may be unleashed only against conditions generating a presently existing actual threat.").

### III. CONCLUSION

For all the reasons stated above, Terminals has demonstrated the four elements required for a stay and respectfully asks the Court to stay all related deadlines and ordered actions set forth in the Court's April 28, 2023 and July 20, 2023 Orders pending Terminals' appeal to the United States Court of Appeals for the Third Circuit.

DATED: August 8, 2023	By:	s/ *Carl A. Beckstedt III, Esq.*
		Carl A. Beckstedt III, Esq.
		VI Bar No. 684
		**BECKSTEDT & KUCZYNSKI LLP**
		2162 Church Street
		Christiansted, St. Croix
		U.S. Virgin Islands 00820
		Tel: (340) 719-8086 / Fax: (800) 886-6831
		carl@beckstedtlaw.com

		and

		**BLANK ROME LLP**
		Kevin J. Bruno, Esq.
		*Admitted pro hac vice in Cotton*, Civ. No. 2021-0261
		1271 Avenue of the Americas
		New York, NY 10020
		212.885.5000
		kbruno@blankrome.com

		Melanie S. Carter, Esq.
		*Admitted pro hac vice in Shirley*, Civ. No. 2021-0259
		130 N. 18th Street
		One Logan Square
		Philadelphia, PA 19103
		215.569.5720
		melanie.carter@blankrome.com

		*Counsel for Limetree Bay Terminals, LLC*