**DISTRICT COURT OF THE VIRGIN ISLANDS**

**DIVISION OF ST. CROIX**

**CLIFFORD BOYNES, et al.,**

    Plaintiffs,

    v.                                                                1:21-cv-0253-WAL-EAH

**LIMETREE BAY VENTURES, LLC et al.,**

    Defendants.
_____

**HELEN SHIRLEY, et al.,**

    Plaintiffs,

    v.                                                                1:21-cv-0259-WAL-EAH

**LIMETREE BAY VENTURES, LLC et al.,**

    Defendants.
_____

**MARY L. MOORHEAD, et al.,**

    Plaintiffs,

    v.                                                                1:21-cv-0260-WAL-EAH

**LIMETREE BAY VENTURES, LLC et al.,**

    Defendants.
_____

**BEECHER COTTON, et al.,**

    Plaintiffs,

    v.                                                                1:21-cv-0261-WAL-EAH

**LIMETREE BAY VENTURES, LLC et al.,**

    Defendants.
_____

*Boynes v. Limetree Bay Ventures*
1:21-cv-00253-WAL-EAH
Order
Page 2

**TO:**

| | |
|---|---|
| **John K. Dema, Esq.** | **Ke Zhang, Esq.** |
| **Rebekka C. Veith, Esq.** | **Martin A. Sheldon, Esq.** |
| **Brian James Mersman, Esq.** | **Michael L. Sheesley, Esq.** |
| **Gregg R. Kronenberger, Esq.** | **Kevin F. D'Armour, Esq.** |
| **C. Hogan Paschal, Esq.** | **Lisa Michelle Komives, Esq.** |
| **Gaylin Vogel, Esq.** | **Carly Jonakin, Esq.** |
| **Hugh P. Lambert, Esq.** | **Jon F. Carmer Jr, Esq** |
| **Alexis Hill, Esq.** | **Martin A. Shelton, Esq.** |
| **J. Christopher C. Zainey, Jr., Esq.** | **Ronald S. Masterson, Esq.** |
| **William J. Sheppard, Esq.** | **Meredith Pohl, Esq.** |
| **Kerry J. Miller, Esq.** | **Keith Kodosky, Esq.** |
| **Shubhra Mashelkar, Esq.** | **Rob Dille, Esq.** |
| **Lee J. Rohn, Esq.** | **Charlotte K. Perrell, Esq.** |
| **Ethan A. Wilkinson, Esq.** | **Derek Y. Sugimura, Esq.** |
| **Paul C. Thibodeaux, Esq.** | **Kenneth M. Klemm, Esq.** |
| **Christopher G. Garten, Esq.** | **Adam B. Zuckerman, Esq.** |
| **Jennifer Jones, Esq.** | **Jose A. Herrera Paez, Esq.** |
| **Brendan Doherty, Esq.** | **Alexander M. Lyon, Esq.** |
| **Daniel H. Charest, Esq.** | **Amy L. Champagne, Esq.** |
| **Earnesta L. Taylor, Esq.** | **Jennifer G. Levy, Esq.** |
| **Nick P. Panayotopoulos, Esq.** | **Anna Rotman, Esq.** |
| **Charles Edward Lockwood, Esq.** | **Jennifer A. Adler, Esq.** |
| **Daniel T. Donovan, Esq.** | **Hadley J. Hurst, Esq.** |
| **Erin Quick, Esq.** | **Brian Epstein, Esq.** |
| **Mary Elizabeth Miller, Esq.** | **Kristin Dupre, Esq.** |
| **Matthew Scott Owen, Esq.** | **Aimee Adams, Esq.** |
| **J. Daryl Dodson, Esq.** | **Anna Katherin Benedict, Esq.** |
| **Arthur Justin Herskowitz, Esq.** | **Tracy Myers, Esq.** |
| **Francis Healy, Esq.** | **Sarah K. Casey, Esq.** |
| **Kanaan Le'Roy Wilhite, Esq.** | **Camalla K. Guyton, Esq.** |
| **Melvin Brosterman, Esq.** | **N. Kordell Caldwell, Esq.** |
| **Adam Nicholas Marinelli, Esq.** | **Carolyn F. O'Conner, Esq.** |
| **Lori B. Leskin, Esq.** | **Joseph T. Hanlon, Esq.** |
| **Rhonda R. Trotter, Esq.** | **Julie S. Meaders, Esq.** |
| **Robert Franciscovich, Esq.** | **Ronald Schirtzer, Esq.** |
| **Schuyler A. Smith, Esq.** | **Leopoldo J. Yanez, Esq.** |
| **Andres Pino, Esq.** | **Anne D. Wittmann, Esq.** |
| **Chivonne Thomas, Esq.** | **Alexander Heydemann, Esq.** |
| **Jennifer Quildon Brooks, Esq.** | **Aaron Cohn, Esq.** |
| **Ryan C. Stutzman, Esq.** | **David Kerschner, Esq.** |
| **Alex M. Moskowitz, Esq.** | |

# ORDER

**THIS MATTER** comes before the Court on the "Motion to Compel Non-Party Law Firms to Produce Non-Privileged Documents Related to Litigation Concerning Rum Fungus on St. Croix," filed on May 15, 2025 by Defendant Limetree Bay Terminals, LLC ("LBT"). Dkt. No. 1218.[1] In the motion, LBT seeks an Order compelling several law firms to comply with subpoenas commanding those firms to produce non-privileged materials in their possession related to a prior litigation that the firms conducted that LBT argues are relevant to the instant action.[2] The Court held a hearing on the motion on July 22, 2025. For the reasons that follow, the Court will deny LBT's motion.

## BACKGROUND

In 2013, eight individuals filed a lawsuit in the Virgin Islands Superior Court alleging that the alcohol distilling process used by Diageo USVI, LLC and Cruzan Viril, Ltd. on St. Croix failed to capture ethanol vapors, which dispersed across parts of the island and caused *Baudoinia compniacensis*, commonly referred to as "rum fungus," to grow and accumulate on their properties. Dkt. No. 1219 at 4 (citing *In re Rum Fungus Claims*, 71 V.I. 380, 382-83 (V.I. Super. Ct. 2019)). Those plaintiffs generally alleged that the rum fungus caused "an unsightly condition requiring abnormal and costly cleaning and maintenance," weathered their property, rendered their fruit or vegetables "unsightly, undesirable, inedible, and/or unmarketable," and caused them annoyance. *See, e.g.,* Complaint at 1-2, *Alleyne v. Diageo USVI, Inc.*, No. SX-13-cv-143 (V.I. Sup. Ct. Apr. 26,

---

[1] All citations to the docket in this Order refer to the docket in *Boynes v. Limetree Bay Ventures, LLC, et al.*, No. 1:21-cv-00253.

[2] LBT originally filed an identical motion on May 13, 2025. Dkt. No. 1211. The Clerk of Court directed LBT to refile the motion due to a filing error. The court will deny the May 13 motion as moot.

*Boynes v. Limetree Bay Ventures, LLC*
1:21-cv-00253-WAL-EAH
Order
Page 4

2013).³ The plaintiffs in that case did not make any allegations related to their water, water quality, cisterns, or health. The 2013 lawsuit developed into a larger-scale litigation involving many plaintiffs (hereinafter the "Rum Fungus Litigation"). Although the plaintiffs attempted to attain class certification, their requests for certification were denied by the Superior Court. Dkt. No. 1219 at 4. About 150 individuals moved to intervene in the original case, but were all dismissed and directed to refile individual complaints. *Id*. at 4 n.7. Ultimately, 120 cases were filed in addition to the original case. *Id*. (citing *In re Rum Fungus Claims*, 71 V.I. at 382-83). The Rum Fungus Litigation resolved in 2023 via settlement. *Id*.

In the instant litigation, Plaintiffs, a putative class of thousands of individuals with property on St. Croix, allege that between February and May 2021, the Limetree Bay Refinery discharged toxic materials on at least four occasions. Dkt No. 1327 at 5. According to Plaintiffs' Consolidated Second Amended Class Action Complaint, these discharges caused "heavy oil" to spread like a mist and rain over Plaintiffs' properties. *Id*. at 46-61. Plaintiffs allege that these events "poisoned" their homes, property, vegetation, soil, water, cisterns, and plumbing, and exposed the putative class members to "hazardous, toxic, and carcinogenic material." *Id*. at 65-66. In addition to allegations regarding health concerns, Plaintiffs assert that their property was contaminated, their

---

³ Despite both LBT and the Law Firms heavily referencing the complaints filed in the Rum Fungus Litigation during oral argument, neither party entered any of the relevant complaints into the record in this case. Nevertheless, "publicly available records from other judicial proceedings may be judicially noticed . . . to show what was in the public realm at the time, not whether the contents of those documents are true." *Sturgeon v. Pharmerica Corp*., 438 F. Supp. 3d 246, 257 (E.D. Pa. 2020) (internal quotation marks omitted). Thus, the Court takes notice of the Superior Court complaint cited herein only for the purpose of "recognizing what the [plaintiffs] pled and argued . . . and not the truth" of the allegations in the complaint. *Id*.

access to clean drinking water hampered, and their crops destroyed. *Id*. at 65-72. Accordingly, Plaintiffs brought numerous tort claims against several defendants, including LBT, such as negligence, nuisance, trespass, and infliction of emotional distress. *Id*. at 76-89.

LBT avers that there is an overlap between the properties allegedly damaged by the rum fungus and those properties alleged to have been damaged by oil in this case. Accordingly, because the Rum Fungus Litigation documents may have some bearing on LBT's claims and defenses in the instant litigation, LBT subpoenaed the law firms that represented plaintiffs in the Rum Fungus Litigation for "all non-privileged documents . . . related to the Rum Fungus Litigation." Dkt. No. 1219 at 2, 4.

## I. LBT's Motion to Compel

On January 21, 2025, LBT served Notices of Intent to serve subpoenas on Colianni & Leonard LLC, The Pate Law Firm, and Burns Charest, LLP (the "Law Firms") requesting the production of:

> 1. The entire case file(s) related to all litigation concerning *baudoinia compniacensis* (commonly referred to as "Rum Fungus"), excluding materials protected by the attorney-client privilege and/or the attorney work-product doctrine. The requested documents include, but are not limited to:
>     a. All non-privileged correspondence, including communications with third parties;
>     b. Pleadings, motions, and other court filings;
>     c. Discovery requests and responses, including all documents produced therewith;
>     d. Any other exhibits, evidence, or materials filed or exchanged between the parties or third parties, including the results of any testing performed;
>     e. Non-privileged expert reports, opinions, and materials;
>     f. The operative class action settlement agreement; and
>     g. Mailers and publications sent to potential class members, along with the list(s) of addresses to which they were distributed.

Dkt. No. 1219-1.

*Boynes v. Limetree Bay Ventures, LLC*
1:21-cv-00253-WAL-EAH
Order
Page 6

On February 4, 2025, the Law Firms objected to the Notices, claiming that the requested documents were irrelevant, publicly available, and/or covered by a Protective Order entered in the Rum Fungus Litigation limiting their disclosure.[4] *See* Dkt. No. 1219-2. LBT attempted to resolve the dispute through emails and calls with counsel for the Law Firms, but the parties reached an impasse. Dkt. No. 1219 at 6.

LBT argues that the requested discovery is highly relevant, particularly given the broad construction of relevance afforded under Rule 26. According to LBT, plaintiffs' primary allegations in the Rum Fungus Litigation were that rum fungus, a black mold, accumulated on their roofs and cisterns. Significantly, the first-named Plaintiff in the Rum Fungus litigation, Ryan Alleyne, is also a named Plaintiff in this action. The instant action likewise involves allegations that harmful elements have accumulated on Plaintiffs' roofs and cisterns. Additionally, the geographic area related to the Rum Fungus Litigation overlaps, at least in part, with the affected area in the instant litigation. *Id*. at 7.

Moreover, Mr. Alleyne and another named plaintiff in this action, Alvina Ilarraza, both testified during depositions taken in this case about the lasting impact the rum fungus has had on their property. *Id*. at 7-8. Mr. Alleyne explained that "black stuff" accumulated on his roof and would not come off. He stated that it would go down the downspouts and get into his cistern. He ultimately painted over the black fungus. *Id*. (citing to Mar. 12, 2025 Dep. Tr. of Ryan Alleyne). Ms. Ilarraza said that there is still rum fungus on her property and that when she attempts to clean it off, it comes back. She

---

[4] In their response brief, the Law Firms do not make any arguments concerning the Protective Order governing the Rum Fungus Litigation. At the July 22 hearing, the Law Firms explained that the Protective Order did not restrict them from disclosing the documents LBT requested pursuant to a court order.

stated that the fungus was on her cistern at the time of her deposition. *Id*. at 8 (citing to Apr. 11, 2025 Dep. Tr. of Alvina Ilarraza). LBT notes that Ms. Ilarraza obtained a settlement in the Rum Fungus litigation, which she used to take care of her mom. *Id*. at 8. "She is now suing . . . to have that same property cleaned." *Id*.

LBT argues that evidence regarding the existence of individuals suffering from the rum fungus who failed to remediate the effects of the mold or who continued to use their cisterns for drinking water is important for Defendants to know in raising claims and defenses because such information bears directly on the issue of causation as to Plaintiffs' medical and property damage claims. *Id*. at 8-9. Additionally, plaintiffs in the Rum Fungus Litigation who are also putative class members in this litigation are witnesses with relevant information that LBT is entitled to know about. *Id*. at 9.

## II. The Law Firms' Response

The Law Firms assert that LBT bears the initial burden of showing that the information it has requested is relevant, which burden it has not met. Dkt. No. 1239 at 4-5. Petroleum oil and organic fungus are different and a "separate instance of environmental contamination is entirely irrelevant to issues of causation of harm caused by oil emissions." *Id*. at 5. This is not a case where multiple oil refineries may have caused the contamination complained of by Plaintiffs. *Id*. There is only one refinery on St. Croix that could have caused the oil and odor at issue in this case. *Id*. The potential presence of rum fungus on Plaintiffs' cisterns does not in any way alter, mitigate, or aggravate the fact that Plaintiffs also had oil in and on their cisterns and that that oil necessarily came from the Limetree Bay Refinery. The Law Firms also raise other arguments regarding the confidentiality of their former clients' files, *id*. at 3-4, and the burden placed on them by this subpoena, *id.* at 5-6.

*Boynes v. Limetree Bay Ventures, LLC*
1:21-cv-00253-WAL-EAH
Order
Page 8

### III. LBT's Reply

Regarding relevance, LBT asserts that the requested documents are relevant because certain plaintiffs are attempting to recover for the same damages and remediation to the same property twice. Dkt. No. 1272 at 5-7. Additionally, the information it seeks is critical to determine whether a different event caused or contributed to the damage to plaintiffs' property, which affects both the impending litigation regarding class certification and the damages that LBT may be required to pay if it is found liable. Likewise, the rum fungus issue may provide an alternative explanation for some of the putative class members' injuries. *Id*. Furthermore, because the subpoena seeks information "highly relevant to key issues" in the case regarding "causation, mitigation, and the extent of damages" and because Plaintiffs are seeking to certify a class of thousands to recover hundreds of millions of dollars, the burden of this request is minimal compared to its benefit. *Id*. at 9.

### IV. The Hearing

At the July 22, 2025 motions hearing, the Court directed the parties to focus their oral arguments on the relevance of the Rum Fungus Litigation documents. Attorney Carl Beckstedt, on behalf of LBT, argued that the Rum Fungus Litigation documents are relevant primarily for two reasons: (1) some of the plaintiffs in the Rum Fungus Litigation are also named plaintiffs or putative class members in this case; and (2) the allegations between the two lawsuits are very similar: both lawsuits alleged contamination on the plaintiffs' property—particularly their roofs and cisterns.

LBT argued that these similarities have a major bearing on class certification in this case, making the documents relevant. If LBT can utilize the Rum Fungus Litigation documents to show that some of the putative class members' properties faced pre-

existing damages from rum fungus, that individualized factor may so predominate in this case that it would be improper to certify Plaintiffs' putative class. Moreover, these similarities go directly to the causation of the damages alleged. Indeed, named class representative Ryan Alleyne testified during his deposition that the rum fungus got into his cistern and made his water taste different. Thus, the Rum Fungus Litigation documents may demonstrate that the oil from the Limetree Bay Refinery was not the sole cause of the damages alleged by Plaintiffs.

LBT acknowledged that part of the reason it issued this subpoena was because it does not know the impact rum fungus has had on putative Plaintiffs' homes and the issues in this case. For example, LBT does not know the number of individuals who might have been affected by both oil and rum fungus; nor does it know how similar the effects of rum fungus are to the effects of the oil that allegedly contaminated Plaintiffs' property in this action—although LBT asserted that expert reports prepared in the Rum Fungus Litigation would be critical in evaluating those similarities.

The Law Firms, through Attorney Daniel Charest, responded by arguing that the existence of rum fungus on Plaintiffs' properties has nothing to do with the 2021 Limetree Bay Refinery flare outs. The presence of rum fungus in no way mitigates or aggravates the effects of the oil on Plaintiffs' health, homes, and other property. Rum fungus is unsightly and annoying because it constantly returns even after it has been cleaned, but the Rum Fungus Litigation plaintiffs did not allege any medical or health issues related to the rum fungus in their complaints, nor did they allege that the rum fungus impacted their water quality. Indeed, although Mr. Alleyne said that his water tasted different after rum fungus got into his cistern, he continued to drink the water from his cistern until it was contaminated by oil from the flare out. The Law Firms further argued that the cleaning

process used to clean up rum fungus and the process used to clean up oil are different. LBT did not assert otherwise.

Attorney John Dema, on behalf of the Plaintiffs in this case, argued that rum fungus mold is all over St. Croix. He explained that rum fungus has not been linked to any significant health risks and did not cause individuals' cistern water to be non-potable. He argued that LBT was trying to connect two absolutely unrelated issues purely on the basis that both are "contaminants." But LBT failed to put forward competent evidence suggesting that rum fungus and the oil discharged by the Limetree Bay Refinery have similar effects on property, health, or water quality. The Law Firms adopted this argument and added that if LBT truly thought that the presence of rum fungus was relevant to its claims, it could have hired experts to test Plaintiffs' properties for the existence of rum fungus, which it did not do.

LBT then argued that the reason it was seeking these documents, particularly documents like the expert reports generated in the Rum Fungus Litigation, was to prove that a connection exists between rum fungus and pitch oil—exactly the link the Law Firms insisted that LBT needed to prove to obtain the documents. But it need not make such a showing to demonstrate relevance: the fact that the rum fungus was present on some of Plaintiffs' property—as demonstrated by Mr. Alleyne's and Ms. Ilarraza's testimony—is sufficient to establish the relevance of the Rum Fungus Litigation documents to LBT's claims and defenses in the instant case.

## DISCUSSION

### I. Legal Standard

Rule 45 of the Federal Rules of Civil Procedure authorizes litigants to subpoena non-parties to command them to produce designated documents that are in the non-

parties' possession, custody, or control. Fed. R. Civ. P. 45(a)(1)(A)(iii). It also permits anyone subject to a subpoena to object to the subpoena in writing within fourteen days of service of the subpoena. Fed. R. Civ. P. 45(d)(2)(b). If such an objection is made, the serving party may move for an order compelling production of the requested materials. Fed. R. Civ. P. 45(d)(2)(B)(i). The Court must then rule on the motion and the subpoenaed party is required only to act as directed by the court's order. Fed. R. Civ. P. 45(d)(2)(B)(ii). "[I]t is well settled that decisions on matters pertaining to subpoena compliance rest in the sound discretion of the trial court[.]" *Etzle v. Glova*, No. 3:22-CV-00139, 2023 WL 2578254, at *3 (M.D. Pa. Mar. 20, 2023) (citing *R.J. Reynolds Tobacco v. Philip Morris Inc.*, 29 F. App'x 880, 881 (3d Cir. 2002)) (magistrate judge ruling on motion to compel).[5]

When addressing objections to a subpoena, "[t]he subpoenaing party must first show that its requests are relevant to its claims or defenses." *See In re Domestic Drywall Antitrust Litig.*, 300 F.R.D. 234, 239 (E.D. Pa. 2014). "[B]ecause the purpose of discovery is to uncover facts about the claims and defenses set forth in the pleadings, the boundaries of relevance under Rule 26 depend on the context of each action." *Prall v. Bocchini*, No. 10-cv-1228, 2013 WL 12334127, at *1 (D.N.J. Apr. 4, 2013) (citing *Hickman v. Taylor*, 329 U.S. 495, 501, 507 (1947) (discovery is meant to "clarify the basic issues between the parties, and . . . ascertain[ ] the facts, or information as to the existence or whereabouts of facts, relative to those issues")).

---

[5] "Deciding a motion to compel" filed in light of a subpoenaed party's objections "is the functional equivalent of deciding a motion to quash" filed by the objector. *Millennium TGA, Inc. v. Comcast Cable Comms.*, 286 F.R.D. 8, 10 (D.D.C. 2012); *see also Etzle*, 2023 WL 2578254, at *3-4 (determining whether subpoena must be quashed in response to motion to compel filed over subpoenaed party's objections).

The regular discovery rules regarding relevance govern Rule 45, except that "the standards for non-party discovery require a stronger showing of relevance than for party discovery." *In re Domestic Drywall*, 300 F.R.D. at 240. Courts treat broad subpoenas requesting otherwise irrelevant documents, issued in the hopes that the documents might support a party's legal theories, as "fishing expeditions," which are typically viewed "as an abuse of the liberal Rule 26 relevancy standard." *Robinson v. Horizon Blue Cross-Blue Shield of N.J.*, No. 2:12-cv-02981, 2013 WL 6858956, at *6 (D.N.J. Dec. 23, 2013) ("while the standard of relevancy is a liberal one, it is not so liberal as to allow a party to roam in shadow zones of relevancy and to explore matter which does not appear germane merely on the theory that it might become so.").

## II.    Application

Even when requesting documents from a party to a lawsuit, the scope of discovery "is not unlimited." *Bayer AG v. Betachem, Inc.*, 173 F.3d 188, 191 (3d Cir. 1999). Here, LBT is seeking discovery from a non-party, placing an even greater burden on it to prove relevance. In an effort to meet its burden, LBT cited to several cases holding that a class should not be certified if the cause of the damages to putative class members can be attributed to several disparate factors. *See* Dkt. No. 1272 at 5-6 (citing, *e.g., Reilly v. Gould*, 965 F. Supp. 588, 603 (M.D. Pa. 1997) (action related to lead emissions required too individualized an analysis to certify class because there are many prevalent sources of lead); *Lloyd v. Covanta Plymouth Renewable Energy, LLC*, 585 F. Supp. 3d 646, 657 (E.D. Pa. 2022) (fact that noxious odor could have come from multiple sources weighed strongly against class certification)). These cases emphasize the importance of affording litigants access to evidence that might demonstrate that multiple sources caused the harms alleged in a complaint. They would be apposite if LBT had demonstrated that rum

fungus could cause the harms Plaintiffs complain of in the instant lawsuit. However, rather than providing evidence to demonstrate a link between rum fungus and pitch oil, LBT argued that because both rum fungus and oil are contaminants found on St. Croix properties, the Rum Fungus Litigation documents are necessarily relevant to this case. In so arguing, LBT skipped a critical step in relating the instant case to those it cited in its briefs: it failed to show that the harms to health and property caused by rum fungus could not be readily distinguished from the harms caused by heavy pitch oil.

LBT did not put forward any evidence suggesting that the effects of rum fungus and pitch oil are similar. Without such evidence, the Court is left with little more than a claim from LBT that the Rum Fungus Litigation documents are relevant solely because it says they are; but mere assertion of relevance is not proof of relevance. *See United States v. Abbott Labs.*, 2016 WL 4247429, at *5 (E.D. Pa. Aug. 11, 2016) ("mere similarity in the subject matter of two cases is not enough to demonstrate the relevance of [litigation documents from] another matter" and assertion that it is "highly likely" and a "near certainty" that documents from prior litigation will contain relevant information is insufficient for movant to meet its burden to show relevance).

To support its argument that the discovery it sought was relevant, LBT could have proffered studies demonstrating that both rum fungus and pitch oil cause similar health issues or require similar removal processes. It could have offered evidence that the cisterns at issue in this case tested positive for both oil and rum fungus contamination. It could have offered testimony demonstrating that it is difficult to see physical differences between rum fungus and pitch oil. But LBT offered no such evidence or anything similar. Instead, it issued a broad subpoena for any document that might help it prove its theory that the Rum Fungus Litigation somehow relates to the instant case. That the documents

*may prove* relevant does not render them relevant. *See Robinson*, 2013 WL 6858956, at *6. Thus, LBT's subpoena appears to be more of a fishing expedition than a targeted request for relevant information. *Id*.

Rather, in lieu of offering and presenting data linking the two contaminants, LBT attempted to substantiate its claim of relevance with the deposition testimony of two Plaintiffs who stated that rum fungus had affected their properties. But one of those Plaintiffs, Mr. Alleyne, also said that he did not suffer any physical symptoms tied to rum fungus and did not seek personal injury damages in the Rum Fungus Litigation. Dkt. No. 1219-5. Moreover, he testified that he was able to "get the black fungus off of his roof." Dkt. No. 1219-5. Ms. Ilarazza testified that the "black stuff" remained present on her property to the day of her deposition. However, she also stated that the only ill-effect she suffered from the rum fungus was the annoyance caused by its presence on the side of her roof and on her cistern—but not in her cistern. Dkt. No. 1219-6. Particularly given the expansive and untargeted nature of LBT's subpoena, the lack of evidence presented by LBT regarding the relationship between the effects of rum fungus and pitch oil, and the attenuated deponents' testimonies regarding the presence of rum fungus on their properties, the Court finds that LBT has not met its threshold burden of proving relevance, and that it must, therefore, deny the instant motion to compel. Because the Court finds that LBT has not proven relevance, it need not consider Plaintiffs' other arguments as to why the subpoena should be quashed.

## CONCLUSION

LBT's reliance on the fact that rum fungus and oil are both contaminants is insufficient to carry its burden to demonstrate the relevance of its subpoena, particularly given the heightened burden parties face when subpoenaing non-parties. There are

significant differences between plaintiffs' allegations in the Rum Fungus Litigation and Plaintiffs' allegations in this case. Moreover, there has been no showing that rum fungus affects individual health or water potability in the same way as oil contamination—as alleged in Plaintiffs' complaint—if at all. Additionally, the Court heard uncontroverted argument that rum fungus is removed via a different cleaning method than pitch oil, and it physically appears different from pitch oil. Therefore, the Court must deny the motion to compel.

Accordingly, it is hereby **ORDERED:**

1. LBT's "Motion to Compel Non-Party Law Firms to Produce Non-Privileged Documents Related to Litigation Concerning Rum Fungus on St. Croix," Dkt. No. 1218, is **DENIED.**

2. LBT's Motion to Compel Non-Party Law Firms to Produce Non-Privileged Documents Related to Litigation Concerning Rum Fungus on St. Croix," Dkt. No. 1211, is **DENIED AS MOOT**.

ENTER:

Dated: August 19, 2025

/s/ Emile A. Henderson III
EMILE A. HENDERSON III
U.S. MAGISTRATE JUDGE