## IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
### DIVISION OF ST. CROIX

| | |
|---|---|
| **CLIFFORD BOYNES, et al.,**<br>    **Plaintiffs,**<br>**v.**<br>**LIMETREE BAY VENTURES, LLC, et al.,**<br>    **Defendants.** | **Civil Action No. 2021-0253** |
| **HELEN SHIRLEY, et al.,**<br>    **Plaintiffs,**<br>**v.**<br>**LIMETREE BAY VENTURES, LLC, et al.,**<br>    **Defendants.** | **Civil Action No. 2021-0259** |
| **MARY L. MOORHEAD, et al.,**<br>    **Plaintiffs,**<br>**v.**<br>**LIMETREE BAY VENTURES, LLC, et al.,**<br>    **Defendants.** | **Civil Action No. 2021-0260** |
| **BEECHER COTTON, et al.,**<br>    **Plaintiffs,**<br>**v.**<br>**LIMETREE BAY VENTURES, LLC, et al.,**<br>    **Defendants.** | **Civil Action No. 2021-0261** |

## <u>PLAINTIFFS' OPPOSITION TO EMERGENCY JOINT MOTION TO STAY</u>

Plaintiffs in the above-captioned actions respectfully oppose the Emergency Joint Motion to Stay (Dkt. Nos. 1298, 1301)[1] filed by Defendants, EIG Global Energy Partners, LLC ("EIG"),

---

[1] "Dkt. No. __" refers to docket entries in the *Boynes* matter. *See* Dkt. Nos. 484, 487, 488, 493.

1

Limetree Bay Ventures, LLC ("LBV"), Limetree Bay Refining, LLC ("LBR"), and Limetree Bay Terminals, LLC ("LBT") (collectively "Movers").

Defendants yet again seek to delay this litigation. This time, Movers ask this Court to stay this case for nearly another year based solely on the speculative possibility that a criminal case might be brought against certain witnesses. Even if it were true, the existence of a criminal case would not justify the long delay that Movants seek. But worse, over four years since the events at the heart of this case, no such criminal case has been filed. The only basis for this request is the assertion that one witness was "was requested to testify/be interviewed . . . by the DOJ"[2] at an unidentified time, and that the United States Department of Justice issued grand jury subpoenas requesting documents to EIG Management Company, LLC and Limetree Bay Terminals, LLC in the Spring of 2023—*more than two years ago*.[3] Notably, in 2021, the Environmental Protection Agency ("EPA") asserted only *civil* violations against Limetree Bay Refining, LLC and Limetree Bay Terminals, LLC.[4] And since that time, President Donald Trump's administration has issued several executive orders and policy directives disfavoring criminal prosecution for violations of environmental regulations, such as the Clean Air Act.[5] On this sparse record, Movers attempt to manufacture concern by speculating that the EPA "could potentially" pursue criminal charges— without offering any evidence to suggest such action is likely. Movers' unsubstantiated and eleventh-hour attempt to delay litigation for another ten months lacks merit and should be denied.

---

[2] Dkt. No. 1301-3.

[3] *See* Dkt. No. 1301-8 (filed under seal).

[4] Dkt. No. 1301-4.

[5] *See* Sarah N. Lynch, *Trump Administration Halts Environmental Litigation, Sidelines Lawyers, Sources Say* (Jan. 24, 2025), available at https://www.reuters.com/world/us/trump-administration-halts-environmental-litigation-sidelines-lawyers-sources-2025-01-24/; Alyse Adamson et al., *What the New Executive Order on "Fighting Overcriminalization in Federal Regulations" Means for Environmental Criminal Enforcement* (June 23, 2025), available at https://www.bdlaw.com/publications/what-the-new-executive-order-on-fighting-overcriminalization-in-federal-regulations-means-for-environmental-criminal-enforcement/.

**BACKGROUND**

**I.    Movers' purported concern of a parallel criminal case is yet another unsubstantiated, eleventh-hour attempt to delay these proceedings.**

It has been nearly four and a half years since the devastating contamination incidents at the Limetree Bay Refinery. Immediately after the releases, Plaintiffs filed suit to vindicate their rights. Since the inception of these matters, however, Defendants have sought to delay the progress of the litigation and to avoid all accountability for their actions, including by shirking their basic discovery obligations in opposing Plaintiffs' attempts to confer pursuant to Rule 26(f); by moving to stay discovery until motions to dismiss were resolved;[6] and, more recently, in attempting to extend discovery deadlines while simultaneously requesting that the Court stay Plaintiffs' deposition discovery.[7]

This time, Movers have filed an "emergency" motion to stay the litigation for nearly a year because of their purported concern that two executives (Jeffrey Rinker and Robert Weldzius) might invoke the Fifth Amendment in their upcoming depositions and, as such, purportedly hamstring Movers' ability to present their defense. But none of this is new. For years, Movers have known about the criminal investigation related to the Limetree Bay contamination incidents and Plaintiffs' intentions to depose people with knowledge of the incidents. Yet, they have never before expressed concern that potential criminal liability may impact the progression of discovery in this matter, let alone the advancement of the case at large.

Movers' motion confirms the suspect timing. The issues related to the U.S. Department of Justice grand jury subpoenas for documents and any potential criminal investigation related to Limetree Bay contamination incidents occurred in 2021 and 2023.[8] And there have been no further

---

[6] See Dkt. No. 485.
[7] Dkt. No. 978.
[8] Dkt. No. 1301 at pp. 5-6.

identified substantive developments since that time. On numerous occasions at the outset of discovery in this matter, Movers had every opportunity to timely raise any concerns they may have had about the criminal investigation and its potential purported impact on their ability to mount a defense in the litigation. But they stayed quiet. For example, in January 2024, certain Defendants filed a motion to stay discovery until motions to dismiss were resolved.[9] Then, on March 20, 2024, the Court held a Status Conference during which the parties (including Movers) argued extensively about how litigation would proceed.[10] In neither instance did any Mover mention the parallel criminal proceedings or how those might impede their ability to mount a defense in the litigation.

Moreover, on April 8, 2025, the parties participated in a hearing before the Court regarding Defendants' Motion to Extend Pretrial Deadlines, at which time Movers consented on the record multiple times to a revised Scheduling Order.[11] Indeed, subsequent to the hearing, on April 10, 2025, Plaintiffs (at the direction of the Court) filed a Notice of Filing Order recognizing that "the parties advised the Court that they reached a stipulation as to the extension of certain aspects of the Rule 16 Scheduling Order (Dkt. #677) and affirmed so on the record."[12]

Thereafter, the Court entered a revised Scheduling Order that specifically adjusted discovery deadlines based on an agreement between the parties—including Movers.[13] But throughout this process—and despite the Court inviting the parties to raise any issues relevant to discovery in the litigation—not once did any Mover mention the parallel criminal proceedings or

---

[9] Dkt. No. 485.

[10] *See* Dkt. No. 590.

[11] Dkt. Nos. 978; 1144.

[12] Dkt. Nos. 1148; 1148-1.

[13] Dkt. Nos. 1160-61. *See also* Dkt No. 1159 ("In open court, with all parties present, and conditioned on an April 8, 2025 meet and confer and resulting proposed Amended Scheduling Order, which extends certain discovery deadlines, the movant, [LBR], confirmed that it agreed to modify its Intervention Motion to limit its request to participating as an intervenor-nominal defendant in above-captioned actions. *Accordingly,* [*LBR*] *withdrew, in open court, those portions of the Intervention Motion seeking a 120-day stay of deposition discovery.*") (emphasis added).

any purported potential impact on their defense or the litigation schedule. Movers knew full well that the Court had established the revised schedule to effectively coordinate the class certification process, expert discovery, and fact discovery from class representatives and a dozen defendants. The schedule was designed to accommodate Defendants' ability to present certain witnesses— including Mr. Rinker—within an agreed-upon time frame. Movers' silence on the issue up until the filing of this motion is telling.

## II.    Mr. Rinker's continuous attempts to delay his deposition.

Movers[14] were also aware of Plaintiffs' intent to depose Mr. Rinker at least as early as October 2024, when Plaintiffs identified Mr. Rinker as a fact witness whom they would like to depose. At that time, Robert Bittman identified himself as counsel for Mr. Rinker and reached out to Plaintiffs to discuss Mr. Rinker's voluntary appearance for the deposition.[15] Throughout the rest of 2024 and early 2025, Plaintiffs attempted to secure Mr. Rinker's deposition, including Plaintiffs' agreement to reschedule the deposition several times to accommodate Mr. Rinker's schedule.[16] Mr. Bittman confirmed that Mr. Rinker would be deposed on February 26, 2025, and accepted notice of the deposition on January 16, 2025.[17] At Mr. Bittman's request, Plaintiffs noticed the deposition for the Houston office of Baker Donelson (also counsel to Movers EIG and LBV).[18]

---

[14] With the exception of Mover Limetree Bay Refining, LLC, which accepted its status as a nominal defendant on March 27, 2025. Dkt. No. 1096. LBR certainly knew of this deposition, however, by April 2, 2025, at the latest. *Id.* at 6.

[15] *See* Ex. 1, October 21, 2024 email from Mr. Bittman to Plaintiffs' counsel, Kerry Miller.

[16] *See generally* Ex. 2, January 2025 email exchange between Mr. Bittman and Mr. Miller.

[17] *Id.* at pp. 1, 2.

[18] *Id.* at p. 1. Plaintiffs later learned that Mr. Rinker also engaged Baker Donelson to represent him in defending his deposition. Ex. 3, February 21, 2025 letter from Mr. Bittman to Magistrate Judge Henderson, at n.2.

On February 19, 2025—just five days before Mr. Rinker's scheduled February 26, 2025 deposition—Mr. Bittman advised that Mr. Rinker would not appear at the deposition as earlier agreed and noticed, because of Plaintiffs' counsel's "decision not to provide [him] a summary of topics to be discussed at the deposition or to provide [him] with copies of the documents [that would be used] at the deposition."[19] Of course, Plaintiffs had no obligation to provide such topics and had voiced their concerns that Mr. Rinker could be in communication with lawyers, such as EIG and LBV's Baker Donelson lawyers, who are adverse to Plaintiffs.[20]

On February 20, 2025, Plaintiffs submitted a letter to Magistrate Judge Henderson, requesting assistance with Mr. Rinker's continued, wrongful obfuscation and delay, in accordance with this Court's discovery procedures. On February 21, 2025, Mr. Bittman submitted a letter to Judge Henderson in response, arguing (despite many prior assurances that he would appear) that "Mr. Rinker is under no legal obligation to appear at a deposition in this case, as he has never been subpoenaed" and "no jurisdiction exists to compel Mr. Rinker, as no subpoena has been issued and he resides and works in Houston, Texas."[21] Therein, Mr. Bittman also confirmed that "Mr. Rinker has also recently engaged Baker Donelson … to assist with defending his deposition in Houston," validating Plaintiffs' earlier concern that counsel for Defendants were coordinating with Mr. Rinker.[22] In accord with Mr. Rinker's newfound demand to be subpoenaed, Plaintiffs issued the subpoena on February 21, 2025, and served Mr. Rinker with the subpoena the next day.[23]

On February 24, 2025—now just two days before the February 26, 2025 deposition—Mr. Bittman asked to "put off the deposition to a later date, such as May 2025," though Mr. Bittman

---

[19] *See* Ex. 4, February 2025 email exchange between Mr. Bittman and Mr. Miller, at p. 1.
[20] *Id.* at p. 2.
[21] Ex. 3, February 21, 2025 letter from Mr. Bittman to the Honorable Magistrate Judge Emile Henderson, at pp. 1-2.
[22] *Id.*
[23] Ex. 5, Rinker Subpoena.

(correctly) acknowledged that Mr. Rinker had been served with and was now subject to the subpoena.[24] This time, Mr. Bittman's pretext for delay was to prevent "having Mr. Rinker be deposed multiple times because another defendant (LBR) may be added and/or because many documents have yet to be produced" ("[i]n addition to a lack of preparation").[25] Mr. Bittman advised of his preference to "reschedule Mr. Rinker's deposition in April," and he subsequently "[c]onfirmed and agreed" to set the deposition for April 15, 2025.[26]

In the interim, certain Defendants—including Movers EIG and LBV—moved for a continuance of discovery deadlines, which the Court granted after each party confirmed on the record that no further delay would be sought in this case.[27] Mr. Rinker took the opportunity again to delay his deposition and requested that his deposition be postponed a third time. On April 10, 2025—just five days before the deposition date—Adam Zuckerman, counsel for EIG, LBV, and Mr. Rinker, emailed Plaintiffs' counsel to reset Mr. Rinker's deposition for July 16, 2025.[28] In that correspondence, Mr. Zuckerman "confirmed Mr. Rinker's availability on July 16 at Baker Donelson's Houston office, and that he will remain subject to the subpoena."[29]

Plaintiffs' counsel proceeded to prepare for Mr. Rinker's deposition, as it was now confirmed to go forward on July 16, 2025, and Plaintiffs' counsel heard nothing further from Mr. Bittman, Mr. Zuckerman, or any other attorney for Mr. Rinker for several months. Then, on July 9, 2025—only one week before Mr. Rinker's deposition—Mr. Bittman delivered a letter to Plaintiffs' counsel, announcing for the *first time* that "Mr. Rinker will be asserting his rights under

---

[24] See Ex. 6, February 2025 email exchange between Mr. Bittman and Mr. Miller, at p. 3 ("Kerry, as you know, on Saturday, February 22, 2025, you served Mr. Rinker with a subpoena to appear for a deposition.").
[25] *Id.* at p. 2.
[26] *Id.* at pp. 1-2.
[27] *See* Dkt. Nos. 978; 1144; 1148; 1160.
[28] *See* Ex. 7, April 2025 email exchange between Adam Zuckerman and Mr. Miller, at p. 1.
[29] *Id.*

the Fifth Amendment to the United States Constitution and will not answer any questions relating, referring, or pertaining to the [above-captioned] Matters."[30] Not once in the nine months since Plaintiffs identified Mr. Rinker as a deposition witness did Mr. Bittman, Mr. Zuckerman, or any lawyer for Mr. Rinker raise the Fifth Amendment privilege as a reason that he could not be deposed.

Promptly upon receipt of Mr. Bittman's letter, Plaintiffs' counsel responded that Mr. Rinker's blanket invocation is impermissible as a matter of law:

> [A] witness in a civil proceeding cannot invoke a blanket 5th Amendment Privilege and may only do so against specific questions. *Nat'l Life Ins. v. Hartford Accident & Indem. Co*., 615 F.2d 595, 596 (3d Cir. 1980). Therefore, we will appear and ask questions to which the witness will have to respond to on a question by question basis.[31]

In response, Mr. Bittman replied simply: "See you next Wednesday," indicating that Mr. Rinker would appear at the deposition on that date.[32] But that never happened.

At 9:47 PM on July 15, 2025—the day before Mr. Rinker's scheduled deposition and the same day Movers filed the instant emergency motion to stay—Mr. Rinker filed a motion for a protective order in the Southern District of Texas and informed Plaintiffs, for the first time, that Mr. Rinker would not be appearing at his scheduled deposition the following day.[33] By then, Plaintiffs' counsel had traveled to Houston and incurred the time and expense to depose Mr. Rinker.

---

[30] Ex. 8, July 9, 2025 letter from Mr. Bittman to Mr. Miller, at p. 1.

[31] Ex. 9, July 9, 2025 email exchange between Mr. Miller and Mr. Bittman (further responding that "[a]dditionally, to the extent the questions posed at the deposition may only incriminate the entities Mr. Rinker worked for or with, as opposed to Mr. Rinker personally, Mr. Rinker may not invoke the Fifth Amendment because its protections are designed to prevent the use of the legal process to force accused individuals to provide incriminating testimony in a personal capacity only.").

[32] *Id.*

[33] *See* Ex. 10, July 15, 2025 email exchange between Mr. Miller and Mr. Bittman; *see also* Dkt. No. 1, *Boynes v. Limetree Bay Ventures, et al.*, No. 25-mc-1301 (S.D. Tex. July 15, 2025).

On July 16, 2025, Mr. Rinker failed to appear at his deposition. Plaintiffs' counsel, who had traveled to Houston and arranged for a court reporter and videographer to record the deposition, attended the deposition and recorded a *proces verbal* to memorialize Mr. Rinker's non-compliance with Plaintiffs' subpoena.

Plaintiffs oppose both the motion for a protective order (which Plaintiffs have sought to have transferred to this district) and Movers' motion for an emergency stay.[34]

## LAW AND ANALYSIS

### I.    Movers have not demonstrated the necessity of the extraordinary remedy of a stay.

The Third Circuit has long recognized that the Constitution does not require a stay of civil proceedings during the duration of parallel criminal proceedings. *De Vitta v. Sills*, 422 F.2d 1172, 1181 (3d Cir. 1970) (citing *Texaco, Inc. v. Borda*, 383 F.2d 607, 608 (3d Cir. 1967); *United States v. Am. Radiator & Standard San. Corp.*, 388 F.2d 201, 204 (3d Cir. 1967)). To the contrary, a stay of a civil case is generally considered an "extraordinary remedy" that is disfavored. *See, e.g.*, *Forrest v. Corzine*, 757 F. Supp. 2d 473, 467 (D.N.J. 2010) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936); *Walsh Sec., Inc. v. Cristo Prop. Mgmt., Ltd.*, 7 F. Supp. 2d 523, 526 (D.N.J. 1998)).

To determine whether a stay is warranted, this Court "must weigh competing interests and maintain an even balance." *Id.* (quoting *Landis*, 299 U.S. at 254-55). To do so, courts in the Third Circuit generally apply a six-factor test to determine whether a stay of a civil action pending the resolution of a related criminal case is warranted. Those factors include: "(1) the extent to which the issues in the civil and criminal cases overlap; (2) the status of the criminal proceedings,

---

[34] *See* Dkt. No. 7, *Boynes v. Limetree Bay Ventures, et al.*, No. 25-mc-1301 (S.D. Tex. July 18, 2025); Dkt. No. 9, *Boynes v. Limetree Bay Ventures, et al.*, No. 25-mc-1301 (S.D. Tex. July 15, 2025).

including whether any defendants have been indicted; (3) the plaintiff's interests in expeditious

civil proceedings weighed against the prejudice to the plaintiff caused by the delay; (4) the burden

on the defendants; (5) the interest of the court; and (6) the public interest." *See, e.g.*, *Deloitte*

*Consulting LLP v. Sagitec Sols. LLC*, No. 23-325, 2023 WL 6037201 (D. Del. Sept. 15, 2023);

*Soroush v. Ali*, No. 09-3703, 2009 WL 3467897, at *1 (E.D. Pa. Oct. 28, 2009); *In re NJ Affordable*

*Homes Corp.*, No. 05-60442, 2007 WL 869577, at *5 (Bankr. D.N.J. Mar. 19, 2007); *see also*

*Najawicz v. Virgin Islands Gov't Hosp. and Health Facilities Corp.*, No. 09-149, 2014 WL

12951372, at *2-3 (V.I. Super. Aug. 8, 2014) (applying same test). The movant bears the burden

of establishing the necessity of a stay. *Soroush*, 2009 WL 3467897, at *1.

    **A.** *Overlap of the Issues*

    Without an indictment and relying on actions by the United States Department of Justice

from **over two years ago**, Movers entirely fail to satisfy the threshold and most important factor

supporting a stay. The extent to which the issues in a criminal and civil proceeding overlap is

"considered the most important threshold issue when determining whether or not to grant a stay."

*State Farm Mut. Auto. Ins. Co. v. Beckham-Easley*, No. 01-5530, 2002 WL 31111766, at *2 (E.D.

Pa. Sept. 18, 2002). Necessarily then, in order to determine the extent of overlap, a criminal

indictment defining the parameters of the criminal case is crucial. *See id.*; *Soroush*, 2009 WL

3467897, at *1. "Where a civil defendant has not been indicted, it is difficult for a court to assess

precisely the extent to which the criminal and civil matters overlap." *Deloitte Consulting LLP*,

2023 WL 6037201, at *2 (quoting *Gran Sabana Corp. N.V. v. Kossoff*, No. 21-3154, 2021 WL

3666116, at *3 (S.D.N.Y. Aug. 17, 2021) (not placing "especially great weight on this factor pre-

indictment" because, "[a]lthough the Court assumes that the DA is investigating [defendant] for

the same general events that gave rise to Plaintiff's action, it is not in a position to 'guess what

criminal acts [defendant] might be charged with,' and therefore not in a position to determine with any precision to what extent the matters overlap.")).

In *Soroush*, the district court considered whether to grant a stay under similar circumstances to those present here. The defendants, an owner and CEO of a credit counseling association and the credit association itself, solicited plaintiff to lend money to the association. When the CEO and association failed to make the payments pursuant to the loan, the lender plaintiff brought suit alleging that the association was an alter-ego of the CEO used for the purpose of defrauding the lender. 2009 WL 3467897, at *1. The CEO and association were also being investigated by a Pennsylvania grand jury for criminal violations arising out of the same conduct. Both defendants had been subpoenaed—the association to produce business records, and the CEO to provide testimony. *Id.* Neither defendant, however, was then under indictment. Prior to answering the civil complaint, defendants moved to stay the civil proceedings until the parallel criminal investigation had been completed. *Id.* The court declined to issue a stay and found that the first factor weighed in favor of denying the stay because, without an indictment, there were "no readily-definable criminal proceedings." *Id.* at *2. Nor were there definable civil proceedings because the defendants had not yet answered. *Id.* Without an answer or criminal indictment, the court found that "it [wa]s impossible for [the court] to determine the degree of overlap between the two proceedings," and thus held that the "first and most important factor weigh[ed] in favor of denying the stay." *Id.*

Like in *Soroush*, in the present case, no defendant (and no individual) has been indicted. *At most*, one witness was asked to be interviewed and two defendants received grand jury subpoenas for documents more than two years ago. Nor has any defendant filed an answer here.

Even assuming that Defendants' (now mooted)[35] motions to dismiss could assist the Court in defining the parameters of the civil proceedings here, there is no way for the Court to define the parameters of the criminal proceedings, as there are none. Movers' mere acknowledgement that the Clean Air Act provides for both civil and criminal penalties also does not clarify the scope of the criminal proceedings. The most information Movers provide concerning the issues under investigation can be derived from the two subpoenas received by EIG Management Company, LLC and LBT requesting documents, and a June 11, 2021 email from the United States Department of Justice requesting a site visit of the refinery after learning that one or more of the pollution events at the refinery "*may* constitute a criminal violation of the Clean Air Act."[36] This is not sufficient. *See State Farm Mut. Auto. Ins. Co.*, 2002 WL 31111766, at *2 (finding the first factor weighs in favor of denying a stay because "the only information concerning the issues under investigation is derived from target letters received by two defendants.").

Further, while Movers rely on *Walsh Securities, Inc. v. Cristo Property Mgmt., Ltd.* for the proposition that "[i]t is 'still possible' to obtain a stay, even though an indictment or information has not yet been returned,"[37] that case turns on a key point not present here, i.e., whether or not "*the Government is conducting an <u>active</u> parallel criminal investigation*." *Walsh*, 7 F. Supp. 2d at 527 (emphasis added). Properly applied, *Walsh* does nothing to support Movers' position here, as Movers cannot point to any ***active*** criminal investigation. Instead, Movers—for the first time in this more than four-year old litigation—feign fear of criminal charges based on letters and actions from the Department of Justice that were sent in June 2021 and April 2023—more than two years

---

[35] *See* Dkt. No. 1316 at p. 24.

[36] *See* Dkt. No. 1301-8 (filed under seal), Apr. 20, 2023 United States Department of Justice Grand Jury Subpoena to EIG Management Company, LLC; Dkt. No. 1301-5, June 11, 2021, 9:05 a.m., Email from Gretchen Shappert to LeAnn Johnson Koch of Perkins Coie LLP (emphasis added).

[37] Dkt. No. 1301 at p. 12 (citing *Walsh*, 7 F. Supp. 2d at 527).

ago. Movers point to absolutely no evidence of an ongoing or current, active investigation. Consequently, the first factor weighs heavily against a stay.

**B.  *The Status of the Criminal Proceedings***

The second factor bearing on the justification for a stay is the stage of the criminal proceedings. Courts have routinely observed that the "strongest case for a stay of discovery in the civil case occurs during a criminal prosecution after an indictment is returned." *Deloitte*, 2023 WL 6037201, at *3 (citations omitted); *Soroush*, 2009 WL 3467897, at *2 ("In examining this factor, the critical question is whether an indictment has been returned against defendants"). This is because "[t]he potential for self-incrimination is greatest" during the post-indictment stage of a criminal proceeding, and "the potential harm to civil litigants arising from delaying them is reduced due to the promise of a fairly quick resolution of the criminal case under the Speedy Trial Act." *Walsh*, 7 F. Supp. 2d at 527 (citing Milton Pollack, PARALLEL CIVIL AND CRIMINAL PROCEEDINGS, 129 F.R.D. 201, 203 (Mar. 1990)). "Conversely, because the risk of self-incrimination is reduced at the pre-indictment stage, and because of the uncertainty surrounding when, if ever, indictments will be issued, as well as the effect of the delay on the civil trial, pre-indictment requests for a stay are typically denied." *State Farm Mut. Auto. Ins. Co.*, 2002 WL 31111766, at *2 (citations omitted).

Importantly, "when a defendant filing a motion to stay has not been indicted, the motion may be denied on that ground alone." *Id.* (citing *United States of America v. Private Sanitation Indus. Ass'n of Nassau/Suffolk, Inc.*, 811 F. Supp. 802 (2d Cir. 1992); *S.E.C. v. Dresser Indus., Inc.*, 628 F.2d 1368, 1376 (D.C. Cir. 1980)). The Court need not go any farther here—no indictment has been filed, and Movers' stale evidence does nothing to show an active investigation by the government. *See In re NJ Affordable Homes Corp.*, 2007 WL 869577, at *5 (finding that

the status of the proceedings weighed against the issuance of a stay because the only evidence of a pending criminal proceeding was the issuance of a subpoena for documents over one year prior); *Robbins by Robbins v. Lower Merion Sch. Dist.*, No. 10-665, 2010 WL 11711462, at *2 (E.D. Pa. Apr. 1, 2010) (compelling a deposition in the absence of an indictment or target letter).

Again, the context of this case is far different from any cases Movers cite. For example, in *Walsh*, a case on which Movers rely heavily, the United States Attorney's Office, although not a party to the matter, submitted a sealed affidavit elaborating on the status of the criminal investigation, indicating that its "investigation [wa]s continuing." *Id.* at 526-27. No such evidence exists here. And no governmental entity has supported the request for a stay. Accordingly, the status of the criminal proceedings weighs against the issuance of a stay.

## C. *Prejudice to the Non-Moving Party*

The third factor is the prejudice to the non-moving party that would result from entering a stay. "Private litigants have a substantial interest in the efficient conduct of complex litigation in compliance with the Federal Rules of Civil Procedure." Pollack, PARALLEL CIVIL AND CRIMINAL PROCEEDINGS, 129 F.R.D. at 202; *see also id.* ("Stalling the civil case for a defendant who has ample means to protect himself, or fragmenting the litigations, may be counter-productive and prejudicial to private plaintiffs, particularly in class suits, especially when there are many claimants to a potentially limited pot."). Several courts have rejected requests to delay justice in civil actions for underlying criminal activity: "it would be perverse if plaintiffs who claim to be the victims of criminal activity were to receive slower justice than other plaintiffs because the behavior they allege is sufficiently egregious to have attracted the attention of the criminal authorities." *State Farm Mut. Auto. Ins. Co.*, 2002 WL 31111766, at *3 (quoting *Sterling National Bank v. A–1 Hotels Int'l, Inc.*, 175 F. Supp 2d 573, 575 (2d Cir. 2001)) (citing *Paine, Webber, Jackson & Curtis, Inc.*

*v. Malon S. Andrus, Inc.*, 486 F. Supp. 1118, 1119 (S.D.N.Y. 1980) (stating that because the "defendant's conduct also resulted in a criminal charge against him should not be availed of him as a shield against a civil suit and prevent plaintiff from expeditiously advancing its claim")).

This Court has already recognized the prejudice that Plaintiffs have faced due to the circumstances of this case:

> While this matter has already been pending for nearly three years, it remains in the earliest stages of litigation due to the imposition of two prior stays that were necessitated by the circumstances of the case. ***Further delays in the litigation of this matter pose a risk of losing evidence, which would be prejudicial to Plaintiffs***. *See In re Valeant Pharms. Int'l, Inc.*, 2019 WL 1578677, at *5, 2019 U.S. Dist. LEXIS 63539, at *18-19 (D.N.J. Apr. 12, 2019) (noting that prejudice to plaintiff existed where "the matter is poised to move forward with discovery among the parties after many months of delay and stays[,] [and] [f]urther delay, especially an indefinite stay, will only further allow deposition witnesses' memories to fade."); *see Xinuos, Inc.*, 2022 WL 1224445 at *2. ***The extent of the prejudice here is magnified by the significant delays in the action that have already occurred and the nature of the discovery at issue***, for which Plaintiffs' have argued that the parties would likely need to conduct over one hundred fact depositions.[38]

The Court's recognition of the delays plaguing this case and the burden on Plaintiffs over a year ago is equally (if not more) present now as this case is entering its fifth year and, just as key depositions are calendared, Plaintiffs are presented with yet another attempt by Defendants to stall. Plaintiffs are poised to move forward with this Court's scheduling order, including with the closure of fact discovery on October 17, 2025, and trial in November 2026[39]—*provided* Defendants cease their never-ending delay tactics requiring wasted judicial resources and time. Indeed, Movers' repeated attempts to delay discovery threaten not only Plaintiffs' ability to present their case but also the Court's ability to manage this matter efficiently and fairly. Accordingly, if a stay were granted, Plaintiffs would undoubtedly be prejudiced. *See In re Flint Water Cases*, No. 16-10444, 2019 WL 5802706, at *3 (E.D. Mich. Nov. 7, 2019) (finding this factor weighed in favor of

---

[38] Dkt. No. 663 at pp. 5-6 (footnotes omitted) (emphasis added).
[39] *See* Dkt. Nos. 677 and 1160, Scheduling Order and Amended Scheduling Order.

plaintiff in the Flint Water cases, which, like here, were "a massive and complex piece of litigation where plaintiffs seek relief for many thousands of people," and further noting that, similar to here, "it has been more than five years since the events alleged in the complaint took place, and so there are ever-increasing risks of spoliation, failed memories, and witnesses who leave the jurisdiction or become otherwise unavailable.").

### D. *The Burden on the Movers*

Movers claim that without a stay they "will have no ability to present any valid defenses" without the testimony "of their high-level personnel."[40] Yet, Movers fail to articulate any basis for how their defenses may be impacted by two individuals feigning Fifth Amendment concerns and their unsupported, self-serving statement that "*[b]ased on information and belief*, there are other former high-level personnel of LBV, LBR, and or LBT who have individually retained counsel that intend to invoke their Fifth Amendment rights should Plaintiffs seek to depose them."[41] Movants do nothing to substantiate that assertion. And that failure demonstrates Movers' overall failure of proof. *See In re Mid-Atlantic Toyota Antitrust Litig.*, 92 F.R.D. 358, 360 (D. Md. 1981) (finding that the burden on the defendants weighed against granting a stay, in part, because "[t]here is no evidence, additionally, to suggest that each and every corporate employee of the civil defendants will be unable to respond to civil discovery."). Indeed, before Movers filed the instant motion, several "high-level personnel" employed by the Limetree entities already had been deposed—and none expressed any Fifth Amendment concerns.[42] And in the time since the filing,

---

[40] Dkt. No. 1301 at pp. 16-18.
[41] *Id.* at p. 4 (emphasis added).
[42] Depositions of: Jason Gleason, LBT Incident Commander (Deposition December 5, 2024); Catherine Elizee, Limetree, Environmental Supervisor (Deposition December 6, 2024); Alan Yarosh, LBR VP Maintenance (Deposition March 26, 2025); Kenneth Duinkerk, Limetree Superintendent, Crude/Coking Area Operations (Deposition March 28, 2025).

Defendant EIG, a Mover to this instant Motion to Stay, has allowed one corporate witness, who also qualifies as "high-level personnel," to be deposed without invoking the Fifth Amendment.[43]

Notably, that EIG witness specifically testified that Jeffrey Rinker—an individual Movers claim now seeks to invoke his Fifth Amendment rights and whom the witness had a very close working relationship with—never communicated to him that Mr. Rinker believed he was in any personal criminal jeopardy because of his role as CEO of LBR in 2021; nor did the witness "believe that [Mr.] Rinker ever engaged in criminal activity[.]"[44] In short, Movers' unproven, last ditch attempt to obtain a stay based upon two witnesses invoking the Fifth Amendment does not provide any support that a Fifth Amendment privilege is genuinely threatened,[45] much less any support that these two witnesses' invocation of the Fifth Amendment will actually prevent Movers from presenting their defenses.[46]

Movers also indicate that they will be prejudiced by "adverse inferences allowed as a result of former personnel asserting their Fifth Amendment rights."[47] True, "[r]eliance on the Fifth Amendment in civil cases may give rise to an adverse inference against the party claiming its benefits." *S.E.C. v. Graystone Nash, Inc.*, 25 F.3d 187, 190 (3d Cir. 1994). But the potential for an adverse inference is insufficient prejudice to warrant a total stay of civil proceedings. *See S.E.C. v. Grossman*, 121 F.R.D. 207, 210 (S.D.N.Y. 1987) ("The Court appreciates the defendant's

---

[43] Deposition of Rick Caplan, EIG Vice Chairman & Head of Capital Markets (Deposition July 22, 2025).
[44] *See* Ex. 11, Rough Transcript of R. Caplan Deposition at 153:4-154:24 (July 22, 2025).
[45] And even if the Court were to find that the two witnesses' Fifth Amendment privileges were threatened, "Fifth Amendment self-incrimination protections will in no way be adversely affected by denial of a stay, since corporate defendants are not entitled to those protections." *In re Mid-Atlantic Toyota Antitrust Litig.*, 92 F.R.D. at 360; *see also In re Grand Jury Empaneled on May 9, 2014*, 786 F.3d 255, 258 (3d Cir. 2015).
[46] Unlike in *Volmar Distributors*, on which Movers rely, Movers provide absolutely no evidence, other than conclusory statements, that they will have "little to offer in their own defense" without these witnesses. *Compare Volmar Distribs. v. New York Post Co.*, 152 F.R.D. 36, 41 (S.D.N.Y. 1993) (staying a case after two individual defendants—who were "the central figures in [the] case" but had been indicted and thus invoked their Fifth Amendment rights—in order to alleviate concerns that the other defendants "w[ould] have 'little to offer in their own defense' and hence [would] be prejudiced[.]").
[47] Dkt. No. 1301 at p. 16.

dilemma; however, it does not find that their situation merits a stay on all civil proceedings in this case."). Indeed, the Third Circuit is clear: while "the invocation of the privilege may not be too 'costly,' [it] does not mean that it must be 'costless.'" *Graystone Nash, Inc.*, 25 F.3d at 191; *id.* ("In a civil trial, a party's invocation of the privilege may be proper, but it does not take place in a vacuum; the rights of the other litigant are entitled to consideration as well."); *see also Gellis v. Case*y, 338 F. Supp. 651, 653 (S.D.N.Y. 1972) ("Any witness in a civil or criminal trial who is himself under investigation or indictment is confronted with the dilemma of choosing to testify or to invoke his privilege against self-incrimination. Nevertheless, he must make the choice despite any extra legal problems and pressures that might follow."). Thus, while Movers may be presented with a dilemma, their dilemma does not merit sufficient prejudice to permit a stay on all civil proceedings in this case.

### E. *The Court's Interest*

In some instances, staying discovery until the resolution of parallel criminal proceedings may minimize the Court's burden by avoiding duplicative judicial efforts. *See In re Plastics Additives Antitrust Litig.*, No. 03-2038, 2004 WL 2743591, at *7 (E.D. Pa. Nov. 29, 2004). But not here. Given that no criminal charges have been brought against the civil defendants, there are no duplicative judicial efforts to avoid.

To the contrary, staying discovery in this litigation would hinder the Court's responsibility to keep its docket moving to provide litigants with a timely and effective resolution of their claims. *See, e.g.*, *Dawson v. Dodd*, 1999 WL 410366, at *3 (E.D. Pa. June 17, 1999) ("The Court has a responsibility to control the disposition of the cases on its docket with economy of time and effort for all actors including itself."). "Judicial economy of time and effort is [not] best served by placing a case in civil suspense based upon the mere possibility that a related criminal case may be brought

against one of the defendants." *Id.* A court's duty is particularly important when, as in the instant matter, the complaint that is the subject of the motion to stay has been on the docket for more than four years. *In re Plastics Additives Antitrust Litig.*, 2004 WL 2743591, at *7 (finding that the duty to keep the court's docket moving was "particularly important" when the complaint had been "on the docket for more than 18 months"). Thus, the Court has an interest in proceeding with this case, and this factor weighs against a stay.

### F. *Public Interest*

Public interest considerations also weigh strongly against granting a stay of discovery. In addition to the Court's interest in keeping its docket moving, "the public also has a significant interest in ensuring the flow of this Court's judicial docket so that justice may be administered to the instant litigants, as well as all other litigants before this Court, in a timely fashion." *Id.* The public also has an interest in "the prompt resolution of civil disputes and in not allowing those being investigated for criminal wrongdoing to avoid their civil obligations." *Simon Property Grp., Inc. v. Palombaro*, No. 08-1634, 2009 WL 840245, at *2 (W.D. Pa. Mar. 30, 2009) (citation omitted). This is especially true here where the "relief sought in this case, if obtained, would provide relief to many thousands of [Crucians]." *See In re Flint Water Cases*, 2019 WL 5802706, at *3. Accordingly, the public has a strong interest in this Court denying Movers' request for a stay.

<u>CONCLUSION</u>

Movers have wholly failed to satisfy their burden to show that the "extraordinary remedy" of a stay is warranted here. Movers' disingenuous attempts to delay this proceeding yet again should be ignored. Accordingly, Plaintiffs respectfully request that this Court deny the Emergency Joint Motion to Stay (Dkt. Nos. 1298, 1301) filed by Defendants, EIG Global Energy Partners,

LLC, Limetree Bay Ventures, LLC, Limetree Bay Refining, LLC, and Limetree Bay Terminals, LLC. Plaintiffs further request any additional relief deemed just and appropriate by the Court.

Respectfully submitted,

DATED: July 29, 2025          BY: _/s/ Kerry J. Miller_
                             Kerry J. Miller, Esq.
                             Rebekka C. Veith, Esq.
                             C. Hogan Paschal, Esq.
                             Carly J. McCleskey, Esq.
                             Julie S. Meaders, Esq.
                             FISHMAN HAYGOOD, L.L.P.
                             201 St. Charles Avenue, 46th Floor
                             New Orleans, Louisiana 70170
                             Telephone: (504) 586-5252
                             kmiller@fishmanhaygood.com
                             rveith@fishmanhaygood.com
                             hpaschal@fishmanhaygood.com
                             cmccleskey@fishmanhaygood.com
                             jmeaders@fishmanhaygood.com

DATED: July 29, 2025          BY: _/s/ Hugh Lambert_
                             Hugh Lambert, Esq.
                             J. Christopher Zainey, Esq.
                             Brian Mersman, Esq.
                             LAMBERT ZAINEY SMITH & SOSO, APLC
                             701 Magazine Street
                             New Orleans, Louisiana 70130
                             Telephone: (504) 581-1750
                             Facsimile: (504) 529-2931
                             hlambert@lambertzainey.com
                             czainey@lambertzainey.com
                             bmersman@lambertzainey.com

DATED: July 29, 2025          BY: _/s/ John K. Dema_
                             John K. Dema, Esq.
                             LAW OFFICES OF JOHN K. DEMA, PC
                             1236 Strand Street, Suite 103
                             Christiansted, St. Croix, VI 00820

DATED: July 29, 2025          BY: _/s/ Jennifer Jones_
                             Jennifer Jones, Esq.
                             9003 Havensight Mall, Ste. 319

St. Thomas, V.I. 00802
Telephone: (340) 779-7386
jjones@vienvironmentallaw.com

Counsel for the *Boynes* Plaintiffs

DATED: July 29, 2025          BY: _ /s/ Shanon J. Carson_
                              Shanon J. Carson, Esq.
                              Yechiel Michael Twersky, Esq.
                              John Kerrigan, Esq.
                              BERGER MONTAGUE PC
                              1818 Market Street, Suite 3600
                              Philadelphia, PA 19103
                              Telephone: (215) 875-3000
                              scarson@bm.net
                              mitwersky@bm.net
                              jkerrigan@bm.net

DATED: July 29, 2025          BY: _ /s/ Lee J. Rohn_
                              Lee J. Rohn, Esq.
                              Rhea R. Lawrence, Esq.
                              1108 King Street, Suite 3 (mailing)
                              56 King Street, Third Floor (physical)
                              Christiansted, St. Croix
                              U.S. Virgin Islands 00820
                              Telephone: (340) 778-8855
                              lee@rohnlaw.com
                              rhea@rohnlaw.com

Counsel for the *Cotton* Plaintiffs

DATED: July 29, 2025          BY: _/s/ Daniel H. Charest_
                              Warren T. Burns, Esq.
                              Daniel H. Charest., Esq.
                              Martin D. Barrie, Esq.
                              Quinn M. Burns, Esq.
                              Anna Katherine Benedict, Esq.
                              BURNS CHAREST LLP
                              900 Jackson Street, Suite 500
                              Dallas, Texas 75202
                              Telephone: (469) 904-4550
                              wburns@burnscharest.com
                              dcharest@burnscharest.com
                              mbarrie@burnscharest.com
                              qburns@burnscharest.com
                              abenedict@burnscharest.com

DATED: July 29, 2025　　　　　　　BY:  */s/ Korey A. Nelson*
　　　　　　　　　　　　　　　　　　Korey A. Nelson, Esq.
　　　　　　　　　　　　　　　　　　H. Rick Yelton, Esq.
　　　　　　　　　　　　　　　　　　BURNS CHAREST LLP
　　　　　　　　　　　　　　　　　　365 Canal Street, Suite 1170
　　　　　　　　　　　　　　　　　　New Orleans, LA 70130
　　　　　　　　　　　　　　　　　　Telephone: (504) 799-2845
　　　　　　　　　　　　　　　　　　knelson@burnscharest.com
　　　　　　　　　　　　　　　　　　ryelton@burnscharest.com

DATED: July 29, 2025　　　　　　　BY:  */s/ Timothy W. Burns*
　　　　　　　　　　　　　　　　　　Timothy W. Burns
　　　　　　　　　　　　　　　　　　BURNS BAIR LLP
　　　　　　　　　　　　　　　　　　10 E. Doty Street, Suite 600
　　　　　　　　　　　　　　　　　　Madison, Wisconsin 53703
　　　　　　　　　　　　　　　　　　Telephone: (608) 286-2302
　　　　　　　　　　　　　　　　　　tburns@burnsbair.com

DATED: July 29, 2025　　　　　　　BY:  */s/ Vincent Colianni II*
　　　　　　　　　　　　　　　　　　Vincent Colianni, II, Esq.
　　　　　　　　　　　　　　　　　　Vincent A. Colianni, Esq.
　　　　　　　　　　　　　　　　　　Marina Leonard, Esq.
　　　　　　　　　　　　　　　　　　COLIANNI & LEONARD LLC
　　　　　　　　　　　　　　　　　　2120 Company Street
　　　　　　　　　　　　　　　　　　Christiansted, VI 00820
　　　　　　　　　　　　　　　　　　Telephone: (340) 719-1766
　　　　　　　　　　　　　　　　　　vinny@colianni.com
　　　　　　　　　　　　　　　　　　vince@colianni.com
　　　　　　　　　　　　　　　　　　marina@colianni.com

DATED: July 29, 2025　　　　　　　BY:  */s/ C. Jacob Gower*
　　　　　　　　　　　　　　　　　　C. Jacob Gower, Esq.
　　　　　　　　　　　　　　　　　　GOWER LEGAL LLC
　　　　　　　　　　　　　　　　　　1919 Pine Street
　　　　　　　　　　　　　　　　　　New Orleans, LA 70118
　　　　　　　　　　　　　　　　　　Telephone: (337) 298-9734
　　　　　　　　　　　　　　　　　　jacob@gowerlegal.com

　　　　　　　　　　　　　　　　　　Counsel for the *Shirley* Plaintiffs

DATED: July 29, 2025　　　　　　　BY: */s/ John K. Dema*
　　　　　　　　　　　　　　　　　　John K. Dema, Esq. (V.I. Bar. No. 357)
　　　　　　　　　　　　　　　　　　LAW OFFICES OF JOHN K. DEMA, PC
　　　　　　　　　　　　　　　　　　1236 Strand Street, Suite 103
　　　　　　　　　　　　　　　　　　Christiansted, St. Croix, VI 00820

Telephone: (340) 773-6142
jdema@demalaw.com

DATED: July 29, 2025          BY:  <u>*/s/ Hugh Lambert*</u>
                                   Hugh Lambert, Esq.
                                   J. Christopher Zainey, Esq.
                                   Brian Mersman, Esq.
                                   LAMBERT ZAINEY SMITH & SOSO, APLC
                                   701 Magazine Street
                                   New Orleans, Louisiana 70130
                                   Telephone: (504) 581-1750
                                   Facsimile: (504) 529-2931
                                   hlambert@lambertainey.com
                                   czainey@lambertzainey.com
                                   bmersman@lambertzainey.com

                                   Counsel for the *Moorhead* Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that I filed the foregoing with the Court's ECF system on July 29, 2025, which sent notice to all counsel of record.

<u>*/s/ Kerry J. Miller*</u>